UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 869 |
| | ) | |
| vs. | ) | Honorable Robert W. Gettleman |
| | ) | |
| THOMAS OSADZINSKI | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A DIRECT AND DERIVATIVE RESULT OF ALL ORDERS ISSUED PURSUANT TO 18 U.S.C. §2703(D)**

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby respectfully submits its response in opposition to Defendant's Motion to Suppress Evidence Obtained as a Direct and Derivative Result of All Orders Issued Pursuant to 18 U.S.C. §2703(D). R. 67.

Citing no precedent other than his own expansive interpretation of the Supreme Court's self-described "narrow" holding in *Carpenter v. United States*, 138 S. Ct. 2206, 2211 (2018), the defendant asks this court to find that the government's reliance on Title 18, United States Code, Section 2703d to obtain non-content information from third party electronic communication services providers is unconstitutional. This argument ignores the plain language of *Carpenter*, the holdings of post-*Carpenter* cases and the government's good faith reliance on the language of § 2703d. The motion should be denied.

I. THE STORED COMMUNICATIONS ACT

The Stored Communications Act, 18 U.S.C. §§ 2701-2712 ("SCA"), sets forth a system of statutory privacy rights for customers and subscribers of computer network service providers. Among the SCA's components is a set of procedures that federal and state law enforcement officers must follow to compel disclosure of stored communications from service providers.

The SCA applies to both remote computing services ("RCSs") and electronic communications services ("ECSs"). RCS is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system".18 U.S.C. § 2711(2). An RCS is provided by an off-site computer that stores or processes data for a customer. For example, a service provider that allows customers to use its computing facilities in "essentially a time-sharing arrangement" provides an RCS. H.R. Rep. No. 99-647, at 23 (1986). A server that allows users to store data for future retrieval also provides an RCS. *See Steve Jackson Games, Inc. v. United States Secret Service*, 816 F. Supp. 432, 442-43 (W.D. Tex. 1993) (provider of bulletin board services was a remote computing service), aff'd on other grounds, 36 F.3d 457 (5th Cir. 1994).

An ECS is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). For example, "telephone companies and electronic mail companies" generally act as ECS providers. *E.g., Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 900-03 (9th Cir. 2008) (text messaging service provider is an ECS); *In re Application of United States*, 509 F. Supp. 2d 76, 79 (D. Mass. 2007) (cell phone service provider is an ECS); *Kaufman v.*

2

*Nest Seekers*, LLC, 2006 WL 2807177, at *5 (S.D.N.Y. Sept. 26, 2006) (host of electronic bulletin board is ECS); *Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638, 643 n.4 (E.D. Va. 2004) (AOL is an ECS).

Pursuant to § 2703(c)(2), an ECS or RCS must disclose the following in response to a subpoena:

> (A) name;
> (B) address;
> (C) local and long distance telephone connection records, or records of session times and durations;
> (D) length of service (including start date) and types of service utilized;
> (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
> (F) means and source of payment for such service (including any credit card or bank account number).

Pursuant to § 2703(d), the government may obtain, via court order, the information available via subpoena as well as "record[s] or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)." § 2703(c)(1). This includes, for example, email addresses of others with whom the subscriber has corresponded. To obtain a § 2703(d) order, the government must cite "specific and articulable facts showing that there are reasonable grounds to believe that the [information sought is] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). This standard is "significantly lower than the probable-cause requirement for a warrant." *United States v. Castro-Aguirre*, 983 F.3d 927, 934 (7th Cir. 2020).

Finally, when the government obtains a search warrant, service providers can be compelled to produce everything associated with an account, including "the

contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less." 18 U.S.C. § 2703(a), as well as information that can be obtained via a 2703(d) order or a subpoena.

## II. APPLICATIONS AND ORDERS OBTAINED PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 2703(D)

On July 5, 2018, Judge Castillo granted the government's motion pursuant to § 2703(d) to obtain information related to Google, Microsoft, Instagram, Twitter, Facebook, Tumblr, Ask.Fm, Wickr, Yahoo, Snapchat, Skype, Tango, Amazon, Ebay, and WhatsApp accounts ("Subject Accounts").[1]

In support of its application, the government submitted an affidavit from an FBI Special Agent which cited statements by Individual A, who was interviewed by the FBI. According to the interview, Individual A had known the defendant for at least four years. Individual A stated that the defendant "regularly" downloaded ISIS propaganda, including videos and images depicting violence, death, and military combat and technology. Individual A further stated that the defendant maintained approximately 100 to 300 ISIS-related videos on his computer. *Id.* Finally, Individual A stated that the defendant used Electronic Communication App A to communicate with ISIS supporters. *Id.*

Chief Judge Castillo approved the application and ordered that the service providers produce certain records pursuant to § 2703(d). These records included,

---

[1] The 2703(d) applications and orders are under seal and can be provided to the court upon request.

4

"customer or subscriber account information," "transactional records," "all available non-content header information for messages sent to and from the Subject Accounts," which included "address information, usernames of the sender and recipients of messages, date and time of the communication, routing information, IP address connection records, and data transfer volume" and "accounts linked by cookies, email address, IP address, or phone number to the Subject Accounts."

On August 17, 2018,[2] Acting Chief Judge Kendall granted the government's motion pursuant to § 2703(d) to obtain information from Discord. A second motion and order to Discord was granted Judge Castillo on August 22, 2018. Consistent with an office-wide change in practice related to applications pursuant to § 2703(d), this application was certified by an Assistant United States Attorney working on the matter. The application cited the interview with Individual A described above and included statements by Individual D, who was also interviewed by the FBI. According to Individual D, the user of one of the Subject Accounts began speaking over a voice channel on Discord and disclosed the telephone number for his "FBI handler." Individual D called that number and reached the FBI. The application further stated that the Subject Accounts were associated with the defendant and that the FBI telephone number disseminated over Discord had been previously given to the defendant by an FBI agent involved in this investigation.

---

[2] At present, the government does not intend to rely on any of the information received in response to the August 17, 2018 order at trial.

The resulting order authorized the disclosure of the same non-content information as the July 5 Order, namely subscriber information, non-content header information, accounts linked to the Subject Accounts, and subscriber information for accounts associated with the Subject Accounts.

Finally, a 2703(d) application was submitted by the Eastern District of Virginia and the district court granted the requested order. It pertained to a YouTube account associated with the defendant, and the returns from that order have been produced in discovery to the defense. The government intends to use the subscriber email address associated with that YouTube account at trial, which, as discussed below, could have been obtained solely with a subpoena.

### III. ARGUMENT

#### A. The SCA Does Not Provide A Suppression Remedy

The defendant's motion must fail because there is no suppression remedy for non-constitutional violations of the SCA, including a failure to set forth "specific and articulable facts" in support of an application. However, even if such a remedy were available, because the government's application was supported by "specific and articulable facts" demonstrating "reasonable grounds to believe that the [information sought was] relevant and material to an ongoing criminal investigation," 18 U.S.C. § 2703(d), the defendant's motion should be denied.

Section 2708 of the SCA provides that "[t]he remedies and sanctions described in this chapter are the *only* judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708 (emphasis added). Elsewhere, the Act provides for civil damages, *see id.* § 2707, and criminal penalties, *see id.* § 2701(b),

6

but it does not provide for the suppression of evidence. Consistent with the statutory language, courts considering challenges to information obtained pursuant to § 2703(d) have routinely held that the SCA "affords no suppression remedy for non-constitutional violations" and accordingly, even if a violation of the SCA is shown, "exclusion would not be the appropriate remedy." *United States v. Powell*, 444 F. App'x 517, 520 (3d Cir. 2011); *see also, United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) ("suppression is not a remedy for a violation of the Stored Communications Act"); *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir.2011) (there is no exclusionary rule generally applicable to statutory violations); *United States v. Jones*, 908 F. Supp. 2d 203, 209 (D.D.C. 2012) ("Even assuming the applications lacked sufficient factual support, the Court would be powerless to order the suppression of the evidence that the government had obtained."); *United States v. Stamat*, 2020 WL 8413488, at *5 (D. Minn. Nov. 20, 2020), report and recommendation adopted, 2021 WL 252424 (D. Minn. Jan. 26, 2021) ("The Stored Communications Act simply does not provide for suppression as a remedy for a violation thereof"); *United States v. Smith*, 2006 WL 8438323, at *9 (D. Minn. Aug. 2, 2006) ("violation of the [Stored Communications] Act does not warrant suppression"); *United States v. Ferguson*, 508 F.Supp.2d 7, 10 (D.D.C.2007); *United States v. Hardrick,* 2012 WL 4883666, at *8 n. 44 (E.D. La. Oct. 15, 2012); *United States v. Smith,* 155 F.3d 1051, 1056 (9th Cir.1998) ("[T]he Stored Communications Act

7

does *not* provide an exclusion remedy.").³ For this reason, the defendant's motion should be denied, and the Court need not reach the question of whether the government set forth "specific and articulable facts" in support of its application.

However, the government's July 5, 2018 application in support of its motion more than met the § 2703(d) standard. Namely, it included "specific and articulable facts showing that there are reasonable grounds to believe that the [information sought is] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). The application described in detail facts provided by Individual A, first as an anonymous tipster and later during an in-person interview with the FBI. According to that interview, Individual A had personally known the defendant for at least four years and was aware that defendant "regularly" downloaded ISIS propaganda, maintained approximately 100 to 300 ISIS-related videos on his computer, and communicated with ISIS supporters. None of this information is general or conclusory. The facts in the application are sufficiently specific and are more than sufficient to show "that there are reasonable grounds to believe that the [information sought is] relevant and material to an ongoing criminal investigation."

---

³ Defendant cites a single case granting a motion to suppress in the 2703(d) context. Def. Br. at 17, *citing United States v. Moreno-Vasquez*, No. CR 18-549-TUC-CKJ (LAB), 2020 U.S. Dist. LEXIS 42047, at *7-8 (D. Ariz. Mar. 10, 2020). However, that decision failed to address the explicit language of the SCA and did not cite or distinguish any of the cases cited above. Moreover, the challenge in *Moreno-Vasquez* was to cell-site location information (CSLI) obtained without a warrant pre-*Carpenter* but challenged post-*Carpenter*. Thus, the court was evaluating whether the good faith exception applied in the context of the changed cell site location information landscape. Here, the defendant's arguments call for a broad expansion of *Carpenter* that is at odds with the Supreme Court's "narrow" holding. For the reasons described in Section B below, the *Carpenter* holding does not apply here.

18 U.S.C. § 2703(d). More specifically, the records from the service providers were relevant to identifying who the defendant was communicating with and what methods of communication he used (and whether those methods were susceptible to service of U.S. legal process), among other items.

The cases cited by the defense are easily distinguished because they addressed applications based on conclusory statements and generalized assertions rather than specific facts. In *In re Applications of the United States of Am. for an Ord. Pursuant to 18 U.S.C. § 2703(d)*, 206 F. Supp. 3d 454 (D.D.C. 2016), the court found that a "two-sentence description of the murder and no factual information about the alleged perpetrators, the basis for the government's belief that those individuals committed the crime, or any connection between the 21 electronic accounts and the crime under investigation" was insufficient. Rather, the government merely alleged that "[i]nvestigators have learned that individuals who perpetrated the attack used or purported to use a variety of" the 21 electronic accounts, and that the records and information sought in the applications were "relevant and material" to the investigation because they "will help investigators learn whether and how the perpetrators of the attack communicated with each other and other co-conspirators."

But more importantly, this case was a denial of the government's application for an order pursuant to § 2703(d); it did not grant a motion to suppress or endorse a suppression theory in this context. It's holding therefore does not apply to the motion at issue.

9

### B. *Carpenter* Does Not Apply to the Non-Content Information Obtained by the Government

The thrust of defendant's argument is that this Court should expand the self-described "narrow" holding of *Carpenter v United States,* 138 S. Ct. 2206 (2018), and hold that non-content header information and other information produced pursuant to the express language of § 2703(d) was unconstitutionally obtained. Neither Carpenter nor the decisions that have followed it support such a finding.

*Carpenter v. United States* addressed whether the government could, without a search warrant, obtain CSLI collected by wireless carriers. As defined by the Supreme Court, CSLI is a time-stamped record of connections a particular cell phone has with nearby towers. *See Carpenter*, 138 S. Ct. at 2211. As a result, CSLI provides a recurring record of a cell phone's rough location. The Supreme Court noted the unusual sensitivity of such precise location information, noting that a cell phone is "almost a 'feature of human anatomy,'" and that CSLI "tracks nearly exactly the movement of [a cell phone's] owner." *Id.* at 2218. Thus, the Court found that obtaining CSLI enabled the government to obtain "near perfect surveillance" in both public and private locales "as if it had attached an ankle monitor to the phone's user." *Id.* at 2218 (quoting *Riley v. California,* 573 U.S. 373 (2014)). *Carpenter* held that, under these "novel circumstances," the third-party doctrine did not apply to the CSLI in that case, that Carpenter had a reasonable expectation of privacy in the CSLI associated with his phone, and that as a result, the government must generally obtain a warrant to acquire CSLI. *Id.* at 2217–20.

The Court emphasized that its "decision today is a narrow one" and that it did not "disturb the application" of other Supreme Court precedent related to the third-party doctrine and privacy. *Id.* at 2220.

More specifically, the *Carpenter* Court held that the holding of *Miller* remained good law. In *Miller*, the Supreme Court found that a defendant had no reasonable expectation of privacy in bank records that were created, owned, and controlled by the bank and contained information "voluntarily conveyed" by the defendant to the bank in the ordinary course of its business. *Miller*, 425 U.S. at 437–38, 440, 442.

*Smith*, the second case that was not "disturbed" by *Carpenter*, dealt with phone records. *Smith* held that a pen register—a device that recorded the outgoing phone numbers dialed on a landline telephone—was not a search and that the Court "doubt[ed] that people in general entertain any actual expectation of privacy in the numbers they dial." *Carpenter* at 2216. Thus, defendant's argument that he has a reasonable expectation of privacy "regarding individuals with whom he communicates," Def. Br. at 19, is directly contradicted by *Smith*. Moreover, the records at issue in *Smith* and *Miller* revealed highly personal information about the "personal affairs, opinions, habits and associations" of the users. *Smith*, 442 U.S. at 741; *Miller*, 425 U.S. at 451 (Brennan, J. dissenting). Such records are not different in kind from those objected to here.

Since *Carpenter*, courts addressing questions related to records held by service providers like those at issue here have found that the third-party doctrine continues to apply. *E.g.*, *United States v. Morel*, 922 F.3d 1, 8 (1st Cir. 2019) ("*Carpenter* did

11

not announce a wholesale abandonment of the third-party doctrine"); *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (noting that "the third-party doctrine continues to apply to 'business records that might incidentally reveal location information,' including … bank records" (quoting *Carpenter*)).

Here the defendant complains of header information for emails because it reveals the individuals or entities that he contacted. Def. Br. at 20. However, he does not explain how this is different than obtaining telephonic toll records, which reveal in precisely the same manner who a person is in contact with and the date and time of that contact. Nor does he explain how the header information is different than the detailed financial information held by banks, including purchase history, all of which can be obtained without a warrant. In short, the information from third party service providers at issue here is similar in kind to the data at issue in *Miller* and *Smith* and is not covered by *Carpenter*.

In addition, since *Carpenter*, courts have rejected challenges – like the one before this Court – seeking to expand *Carpenter's* holding to other information that can be obtained under the SCA. For example, while it is the case that IP addresses can reveal generalized locational information, *see* Def. Br. at 13*,* before *Carpenter*, courts routinely held that there is no reasonable expectation of privacy in records of IP addresses used at the home or through a cellphone. *See, e.g., United States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017); *United States v. Caira*, 833 F.3d 803, 806–08 (7th Cir. 2016); *United States v. Wheelock*, 772 F.3d 825, 828–29 (8th Cir. 2014); *United States v. Christie,* 624 F.3d 558, 574 (3d Cir. 2010); *United States v. Bynum*,

12

604 F.3d 161, 164 (4th Cir. 2010); *United States v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2008); *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008).

*Carpenter*'s holding does not change the analyses of the cases above. Post-*Carpenter*, courts considering challenges to location information derived from IP addresses have uniformly found no reasonable expectation of privacy for such information held by third party providers. The Fourth Circuit directly addressed this issue in *United States v. Wellbeloved-Stone*:

> Wellbeloved-Stone contends that he had a reasonable expectation of privacy in his IP address and subscriber information after Carpenter… Wellbeloved-Stone cites no post-Carpenter authority extending Carpenter's rationale to IP addresses or subscriber information. Accordingly, under *Bynum*, Wellbeloved-Stone had no reasonable expectation of privacy in his subscriber information, and the Government did not perform a Fourth Amendment search by obtaining that information.

777 Fed. App'x 605, 607 (4th Cir. 2019). *See also United States v. Morel*, 922 F.3d 1, 9 (1st Cir. 2019) ("IP address information of the kind and amount collected here—gathered from an internet company—simply does not give rise to the concerns identified in *Carpenter*"), *cert. denied*, 140 S. Ct. 283; *United States v. Van Dyck*, 776 Fed. App'x 495, 496 (9th Cir. 2019) (not precedential) (declining to revisit pre-*Carpenter* case finding no reasonable expectation in IP address logs obtained from an ISP); *United States v. Trader*, 981 F.3d 961, 968 (11th Cir. 2020) (*Carpenter* "applies only to some cell-site location information, not to ordinary business records like email addresses and internet protocol addresses."); *United States v. Hood*, 920 F.3d 87, 92 (1st Cir. 2019) (finding, post-*Carpenter*, no reasonable expectation of privacy in IP address or subscriber information held by online service providers); *United States v.*

13

*Maclin*, 393 F. Supp. 3d 701, (N.D. Ohio 2019) (holding that collections of records from Kik, Dropbox, AT&T, and Verizon did not implicate the reasonable expectation of privacy found in *Carpenter* because these records only included IP logs); *United States v. Eller*, CR 16-8201-01, 2019 WL 6909567, at *2 (D. Ariz. Dec. 19, 2019) (administrative subpoena sufficient to obtain subscriber records and IP address records held by Internet service providers); *United States v. Rosenow*, No. 17 CR 3430, 2018 WL 6064949, at *10–11 (S.D. Cal. Nov. 20, 2018) ("Defendant had no reasonable expectation of privacy in the subscriber information and the IP log-in information Defendant voluntarily provided to the online service providers [Yahoo and Facebook] in order to establish and maintain his account.")

Analogously, Courts considering *Carpenter*-inspired challenges to information obtained from financial entities have rejected the suggestion that *Carpenter* applies to the customer records of banks, eBay, or cryptocurrency exchanges including publicly viewable transactions on the blockchain. In *Zietzke II*, the court concluded that "*Carpenter* is not applicable here because *Carpenter*'s holding is narrowly limited to facts different from this case, because location data is not at issue here, and because it is undisputed that Petitioner voluntarily exposed the requested data to [the third party financial institution]." 2020 WL 264394 *13. *See also United States v. Hall*, No. 16-CR-050-01, 2019 WL 5892776, at *5 (M.D. Penn Nov. 12, 2019) (slip copy); *United States v. Frei*, 17-cr-00032, 2019 WL 189826, at *2–3 (M. D. Tenn. Jan. 14, 2019); *United States v. Schaefer*, No. 17-CR-00400, 2019 WL 267711, at *5 (D. Or. Jan. 17, 2019); *United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020); *Zietzke v.*

14

*United States*, No. 19-cv-03761, 2020 WL 264394 (N.D. Cal. Jan. 17, 2020); *Zietzke v. United States*, 426 F. Supp. 3d 758 (W.D. Wash. 2019).

In sum, the defendant has not cited any cases supporting the expansion of *Carpenter's* holding to include header information, IP address information or any other data provided in connection with the § 2703(d) applications. Nor has he provided any basis – or even argument – to suppress subscriber information and other data that was produced pursuant to the 2703(d) orders that could have otherwise been obtained via subpoena. His motion should be denied.

### C. The Good Faith Exception Applies to the 2703(d) Information

Finally, the defendant's motion should be denied because the government relied in good faith on the authorization to obtain non-content records set forth in § 2703(d) when obtaining the challenged orders. While the 2703(d) information at issue here was lawfully obtained, even unlawfully obtained evidence should not be suppressed "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful," *Davis v. United States*, 564 U.S. 229, 238 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). The exclusionary rule is "restricted to situations in which its remedial purpose is effectively advanced." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). It does not, therefore, apply to an "officer acting in objectively reasonable reliance on a statute," later deemed unconstitutional, because it "will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." *Id.* at 349-50.

Indeed, courts interpreting *Carpenter* have consistently found that CSLI obtained without a warrant pre-*Carpenter* is admissible under the good faith

exception. *See, e.g.*, *United States v. Carpenter*, 926 F.3d 313, 317 (6th Cir.), on reh'g, 788 F. App'x 364 (6th Cir. 2019) (holding that that the CSLI evidence obtained pursuant to § 2703(d) was still admissible against Carpenter himself because of the good-faith exception). That reasoning applies with even more force here, where the challenged information is not covered by *Carpenter's* holding.

## IV. CONCLUSION

For the reasons set forth above, the government requests that the Court deny defendant's motion to suppress.

                    Respectfully submitted,

                    JOHN R. LAUSCH, Jr.
                    United States Attorney

By:   /s/ *Barry Jonas*
       BARRY JONAS
       MELODY WELLS
       Assistant United States Attorneys
       219 South Dearborn Street, 5th Floor
       Chicago, Illinois 60604

       ALEXANDRA HUGHES
       Trial Attorney
       Department of Justice
       National Security Division
       950 Pennsylvania Ave.
       Washington, D.C.

Dated: June 28, 2021