UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 869 |
| | ) | |
| vs. | ) | Honorable Robert W. Gettleman |
| | ) | |
| THOMAS OSADZINSKI | ) | |

## GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby respectfully submits its Omnibus Response to the following motions: Motion for Notice and Production of Discovery Related to Surveillance (R. 69); Objection to Secret Ex Parte CIPA Litigation of Fourth Amendment Suppression Issues and Motion for Disclosure to Cleared Counsel (R. 70); Motion for a Bill of Particulars (R. 71); Motion for Immediate Disclosure of Favorable Evidence (R. 72); Motion for Disclosure of Expert Material Sixty Days Prior to Trial (R. 73); and Motion for Notice and Production of Rule 404(b) Material (R. 74).

## I.   DEFENDANT'S MOTION FOR NOTICE AND PRODUCTION OF DISCOVERY RELATING TO SURVEILLANCE (R. 69)

The defendant filed a motion for an order "compelling the prosecutors to provide notice and discovery productions of all surveillance, electronic, digital, physical or otherwise, that it or any other intelligence agencies, acting on its behalf, used to monitor Defendant or obtain information about Defendant." R. 69 at 1. In

making this request, the defendant cites the Fourth, Fifth, and Sixth Amendments to the Constitution, 18 U.S.C. § 3504, and Federal Rules of Criminal Procedure 12 and 16 (hereinafter, "Rule 12" and "Rule 16"). *Id.* As detailed below, the government has complied with its discovery and notice requirements under the Constitution and laws governing intelligence authorities. The defendant requests that the Court adopt novel notice and discovery requirements unrequired by the law and unadopted by courts. For the foregoing reasons, this request should be denied.

## **ARGUMENT**

As the defense notes in their motion (*id.* at 8-9), on January 23, 2021, defense submitted a formal request for discovery to the government. This request included any surveillance conducted pursuant to the government's foreign intelligence authorities. *Id.*, Exh. A. On April 7, 2021, the government responded that "[t]he government has provided you, either in unclassified discovery or classified discovery, any discoverable material, except to the extent any material has been submitted to the Court pursuant to CIPA Section 4. Moreover, it is the government's position that a FISA notice is not required in this matter." *Id.,* Exh. B at 2. The defense dismisses the government's response as obfuscation intended to "disclose as little as possible." *Id.* at 9. As detailed below, rather than obfuscate, the government has fully complied with its notification and discovery obligations. Defense instead requests the court adopt notification and disclosure requirements that are legally unrequired.

The government's discovery obligations in a criminal case are not limitless. *See United States v. Agurs*, 427 U.S. 97, 106 (1976) (the government is under "no duty to

provide defense counsel with unlimited discovery of everything known by the prosecutor"); *United States v. Griebel*, 312 F. App'x 93, 96 (10th Cir. 2008) (the government's discovery obligations "are defined by Rule 16, Brady, Giglio, and the Jencks Act"); *United States v. Phillips*, 854 F.2d 273, 277 (7th Cir. 1988) (finding that discovery rules do "not grant criminal defendants unfettered access to government files"); *United States v. Colon*, No. 97-CR-659, 1998 WL 214714, at *7-9 (N.D. Ill. Apr. 21, 1998) (addressing the government's discovery obligations). Further, there is no rule of discovery that requires the government to provide a defendant with a clear, concise narrative regarding the origins of the criminal investigation that led to his arrest. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files"); *United States v. Bagley*, 473 U.S. 667, 675 (1985) ("the prosecutor is not required to deliver his entire file to defense counsel"). Rather, the government is required to provide the defense with all discoverable material (including exculpatory information) described in   Rule 16.

Notice concerning the government's intent to use evidence in a criminal case is generally governed by Rules 12 and 16. Rule 12(b)(4)(B) provides, in relevant part:

> [T]he defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

The purpose of this rule is to "provide the defendant with sufficient information to file the necessary suppression motions." *United States v. Ishak*, 277 F.R.D. 156, 158

(E.D. Va. 2011). "Thus, the government's obligation under Rule 12(b)(4)(B) ends when it has made disclosures that sufficiently allow the defendant to make informed decisions whether to file one or more motions to suppress." *Id.*

The government has determined that in this case notice is not required. No court has interpreted Rule 12(b)(4)(B) to require the government to give an accounting of every investigative technique used in the case, regardless of its relationship to admissible evidence. In a criminal case, defense counsel analyzes the discovery and is then free to advance any suppression arguments it wishes to make. That is precisely what has occurred in the instant case. The defendant's request for more information than is legally required should be denied.

The government's notice obligations regarding the use of FISA information under 50 U.S.C. §§ 1806,(f), 1825(d), and 1881(e) apply only if the government (1) "intends to enter into evidence or otherwise use or disclose" (2) "against an aggrieved person" (3) in a "trial, hearing or other proceeding in or before any court, department officer, agency, regulatory body, or other authority of the United States" (4) any "information obtained or derived from" (5) "electronic surveillance [or physical search] of that aggrieved person." 50 U.S.C. §§ 1806(c) and 1825(d); *see also id.* § 1881e(a) (providing that information acquired pursuant to Sections 702 and 703 of FISA "shall be deemed to be information acquired from electronic surveillance pursuant to" Title I of FISA). Only where all five criteria are met must the government provide notice that the United States intends to use or disclose such

information. As noted above, the government has informed the defendant that notice is not required in the instant matter.

In the context of FISA collection, Congress made a decision to allow for greater protection of information than is normally afforded because of the need to protect sensitive national security information, which includes classified sources and methods. Congress intended that FISA "reconcile national intelligence and counterintelligence needs with constitutional principles in a way that is consistent with both national security and individual rights." S. REP. NO. 95-701, at 16. As such, in recognition of "the nature of the national interests implicated in matters involving a foreign power or its agents," Congress provided for more limited disclosure than is ordinarily provided with regard to criminal evidence. *See United States v. Belfield*, 692 F.2d 141, 148 (D.C. Cir. 1982).

The defendant's contention that he is entitled to enhanced notice is further refuted by Congress's assignment of broader FISA notice requirements in certain circumstances, not to include in the context of criminal defendants. *See Dean v. United States*, 556 U.S. 568, 573 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Specifically, Congress identified three scenarios where more specific notice regarding FISA surveillance was warranted. *See* 50 U.S.C. § 1806(j) (notice of particular information regarding surveillance required where the Attorney General approves emergency surveillance and the government does not later obtain

5

authorization from the FISC); *id.* § 1825(b) (requiring notice identifying property seized, altered, or reproduced during physical search of a U.S. person's residence where the Attorney General has determined that there is no national security interest in continued secrecy); *id.* § 1825(j) (notice of particular information regarding physical search required where the Attorney General approves emergency physical search and the government does not later obtain authorization from the FISC). Congress elected not to require such broad disclosure in the situation where a defendant is charged in a criminal proceeding. *See id.* §§ 1806(c) and 1825(d) (requiring only notice "that the United States intends" to use or disclose FISA-obtained or -derived information).

Nevertheless, the defendant argues that he is entitled to additional notice and discovery under 18 U.S.C. § 3504. R. 69 at 34. That section provides, in relevant part:

> In any trial, hearing, or other proceeding in or before any court ... [u]pon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act.

Therefore, beyond the threshold requirements for notice, 18 U.S.C. § 3504 applies only where an "unlawful act" has occurred. 18 U.S.C. § 3504(a)(l) and (b). The defendant provides no basis for its assertion any obtained or derived evidence is the product of an unlawful act.

Moreover, a specific statutory provision normally controls over one of more general application. *See Bloate v. United States*, 130 S. Ct. 1345, 1353-54 (2010); *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991). 50 U.S.C. §§ 1806 and 1825 were enacted in 1978 and 1994, respectively, approximately eight and 24 years after

18 U.S.C. § 3504 was adopted in 1970. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 702, 84 Stat. 922, 935-36 (1970). "[A] later enacted statute may limit the scope of an earlier statute." *Brotherhood of Maintenance of Way Employees v. CSX Transp., Inc.*, 478 F.3d 814, 817 (7th Cir. 2007); *see also Acosta v. Gonzales*, 439 F.3d 550, 555 (9th Cir. 2006) ("[C]onflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute.") (citations omitted). Thus, there is no basis for holding that 18 U.S.C. § 3504 trumps FISA's "later-enacted, more specific" notice provisions. Finally, the defendant has failed to establish a colorable basis to believe that he has been aggrieved by unlawful surveillance of any kind.[1]

Informatively, a similar motion was filed recently in the Northern District of Illinois in *United States v. Ashraf Al-Safoo*, Case No. 18-CR-696, R. 222. Defense made a request for disclose of FISA-related materials and discovery related to FISA-surveillance. There, the government notified the court of its intent to offer into

---

[1] Although the defendant cites *United States v. Apple* for the proposition that his showing of alleged illegal surveillance "need not be complete," the court in *Apple* in fact stated that there must be a "colorable basis" to believe the defendant was aggrieved by the surveillance. 915 F.2d 899, 905 (4th Cir. 1990). Much of the defendant's arguments rest onbare assertions, precisely the kind of showing that courts have found insufficient to establish a colorable claim of illegality. *See, e.g.*, *United States v. Aref*, 285 F. App'x 784, 793 (2d Cir. 2008) (summary order) (finding insufficient defendant's showing that consisted of statements "by unnamed sources in a newspaper article"); *United States v. Londono- Cardona*, No. 05-10304-GAO, 2008 WL 313473, at *2 (D. Mass. Feb. 1, 2008) (finding insufficient defendants' showing of proffered Drug Enforcement Agency teletype messages that referred "only to apparently *lawful* surveillance in Colombia," and a newspaper article discussing alleged warrantless domestic wiretapping that had "no relevance" to the defendants' case); *In re Grand Jury Investigation*, 431 F. Supp. 2d 584, 591 (E.D. Va. 2006) (finding insufficient defense showing of "bare allegations that the government has been intercepting communications through illegal electronic surveillance").

evidence, or otherwise use or disclose in any proceeding, information obtained and derived from electronic surveillance. *Id.* Nevertheless, the defense requested an order compelling discovery of "each surveillance technique [the government] used to obtain information"; "the legal authority relied upon"; and "any warrants, order, directives, and court applications that supported the surveillance used." *Id.* at 4. The court held that, "The government complied with its notice obligations under FISA, and any additional notice regarding any surveillance techniques used, the legal authorities relied upon, or any underlying warrants, order or applications used in connection with such surveillance is not merited." *Id.*, R. 288 at 5 (J. Blakey). In the instant matter, the defendant's request for notice and discovery beyond that which is legally required should likewise be denied.

## II.    DEFENDANT'S OBJECTION TO SECRET *EX PARTE* CIPA LITIGATION OF FOURTH AMENDMENT SUPPRESSION ISSUES AND MOTION FOR DISCLOSURE TO CLEARED COUNSEL (R. 70)

The government respectfully requests that defendant's motion objecting to the use of *ex parte* procedures under CIPA Section 4 likewise be denied. As set forth below, CIPA's procedures are intended to balance the government's interest in protecting national security with the defendant's right to prepare his defense. Defendant has failed to establish why these procedures should be deviated from in the instant case.

**A. CIPA's procedures expressly permit *ex parte* consideration of classified evidence.**

Both CIPA Section 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the United States to submit *ex parte* motions seeking an *in camera* review of classified information that may be potentially discoverable in a federal criminal case. Federal Rule of Criminal Procedure 16(d) provides that a court may permit a party seeking a protective order or seeking to modify a discovery request to "show good cause [why their request should be granted] by a written statement that the court will inspect *ex parte*." Fed. R. Crim. P. 16(d)(1). In CIPA Section 4, "Congress intended . . . to clarify the court's powers under Fed. R. Crim. P. 16(d)(1) to deny or restrict discovery in order to protect national security" and likewise expressly provides for *ex parte* filings. *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988).

Specifically, CIPA Section 4 provides, *inter alia*:

> The court may permit in the United Sates to make a request for [relief from discovery] in the form of a written statement to be inspected *by the court alone*. If the court enters an order granting relief following such an *ex parte* showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. III 4 (1980) (emphasis added). No particular showing is required before the court grants a request to proceed *ex parte* and *in camera*. *See Sarkissian*, 841 F.2d at 965-66; *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984), *vacated and remanded on other grounds sub nom. by United States v. McAfee*, 479 U.S. 805 (1986).

*Ex parte*, *in camera* consideration of government motions to deny or restrict discovery under CIPA Section 4 have been upheld consistently as proper practice. *See, e.g.*, *United States v. Amawi*, 695 F.3d 457, 472-73 (6th Cir. 2012) ("[E]very court that has considered this issue has held that CIPA permits ex parte hearings); *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002) (finding the district court acted within its authority when conducing *in camera*, *ex parte* review of whether classified information was discoverable); *Klimavicius-Viloria*, 144 F.3d at 1261 (approving CIPA Section 4 *ex parte* hearings); *Sarkissian*, 841 F.2d at 965 (*ex parte* proceedings concerning national security information are appropriate under CIPA Section 4); *United States v. Porter*, 701 F.2d 1158, 1162 (6th Cir. 1983). As CIPA's legislative history recognizes, because the "government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." H.R. Rep 96-831, pt. 1, at 27 n. 22.

CIPA Section 4 and Rule 16)(d)(1) authorize the court to deny or otherwise restrict discovery of classified information by the defense. In pertinent part, CIPA Section 4 provides that a district court:

> upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

18 U.S.C. App. III § 4 (1980).

In determining whether to authorize the government to withhold classified

materials from discovery under CIPA Section 4, federal courts have applied the balancing test set forth in *Roviaro v. United States*, 353 U.S. 53 (1957). *See, e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 520-21 (5th Cir. 2011). In *Roviaro*, the Supreme Court considered the application of the informant's privilege—pursuant to which the government may withhold from disclosure the identity of its informants—to the general discovery rules. *Roviaro*, 353 U.S. at 55. The Court held that the defendant's interest in mounting a defense was triggered only when the information in the government's possession was "relevant and helpful to the defense of an accused, or is essential to the defense of an accused . . . ." *Id.* at 60-61. When the evidence is deemed relevant and helpful, courts must "balance[ ] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62.

In *United States v. Yunis*, The D.C. Circuit applied *Roviaro's* reasoning in interpreting CIPA Section 4's statutory requirements. 867 F.2d 617, 623 (D.C. Cir. 1989). The court held that classified information may be withheld from discovery unless it is both relevant and "helpful to the defense of the accused . . . ." *Id.* (citations omitted). Although relevance is a "low hurdle," when seeking disclosure of classified information, the defendant must provide more than "a mere showing of theoretical relevance." *Id.* Rather, to overcome the government's classified information privilege, the defense "is entitled only to information that is at least 'helpful to the defense of [the] accused.'" *Id.* (citing *Roviaro*, 353 U.S. at 60-61).

While the Seventh Circuit has "not explicitly addressed what standard a

11

district court should apply in analyzing government requests for protective orders under CIPA Section 4," this Court has acknowledged "widespread agreement among the other circuits on the four-part test for resolving CIPA discovery motions." *United States v. Turner*, No. 13 CR 572-2, 2014 WL 3905873 at *2 (N.D. Ill. July 29, 2014) (internal citations omitted); *see also United States v. Hanjuan Jin*, 792 F. Supp. 2d 612, 619 (N.D. Ill. 2011). Under this framework, when considering a motion to withhold classified information, the Northern District of Illinois has applied the following factors: 1) whether the information at issue is discoverable; 2) whether the government has made a formal claim of the state secrets privilege; 3) whether the evidence is relevant and helpful to the defense; and 4) "[i]f the information meets the relevant and helpful test, CIPA Section 4 empowers courts to determine the terms of discovery, if any." *Turner*, 2014 WL 3905873 at * 2 (citing *Sedaghaty*, 723 F.3d at 904).

Several circuits have adopted an additional step to the framework above when evaluating classified discovery. *See Roviaro*, 353 U.S. at 62; *cf. El-Mezain*, 664 F.3d at 523 (citing *Roviaro*, 353 U.S. at 60-61) (noting that even when the government properly invokes its privilege, courts must next consider whether the privilege should yield when balancing other interests). After determining whether the information is both relevant and helpful, courts have assessed whether, on balance, overriding national security concerns outweigh the defendant's need for the information. *Sarkissian*, 841 F.2d at 965; *Pringle*, 751 F.2d at 426-29; *Rahman*, 870 F. Supp. 47, 52-53 (S.D.N.Y. 1994).

12

**B.      Defendant fails to establish why CIPA's *ex parte* provisions should not be employed in the instant matter.**

The government respectfully requests that defendant's proposed deviations from CIPA's procedures be denied. Defendant argues that the government should be barred from employing CIPA's *ex parte* procedures in connection with evidence related to suppression issues. Motion at 5. Defendant additionally requests disclosure to cleared counsel of "all surveillance-related information . . . that would inform any motion to suppress based on surveillance the prosecutors have not disclosed." *Id.*

The *ex parte* procedures set forth in CIPA derive from the need to protect national security against the damage caused by unauthorized disclosure of classified information, not the content of the evidence at issue. *Sarkissian*, 841 F.2d at 965. Accordingly, while the relevant and helpful nature of the classified information is central to courts' assessment of whether the information should ultimately be disclosed, *see Yunis*, 867 F.2d at 623, it does not alter the *ex parte* procedure by which courts evaluate that evidence. Defendant cites no cases to support deviating from CIPA's *ex parte* procedures based on the content of the classified information.

Defendant's request that "the prosecution be required to disclose to cleared defense counsel its legal arguments in support of non-production," Motion at 20, is likewise without merit. Defendant cites no legal precedent in support of this proposed anomalous procedure and indeed acknowledges that "these arguments have not been adopted by other district courts." *Id.* n.11. Moreover, practically, the legal arguments

cannot simply be sanitized of the underlying classified information; the legal arguments build on and reference the underlying classified information.

Finally, defense counsel's possession of a security clearance does not alter counsel's entitlement to the underlying classified information. To access classified information, defense counsel must have the requisite security clearance *and a "need to know"* the respective information. *See* Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009) ("A person may have access to classified information provided that . . . the person has a need-to-know the information."); *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 109 n. 19 (2d Cir. 2020) (citations omitted); *United States v. Mohamud*, 666 F. App'x. 591, 595 (9th Cir. 2016) (citation omitted); *United States v. Moussaoui*, 591 F.3d 263, 305 (4th Cir. 2010) (citation omitted); *United States v. Libby*, 429 F. Supp. 2d 18, 24 (D.D.C. 2006); *United States v. Amawi*, No. 3:06CR719, 2009 WL 961143, at *1 (N.D. Ohio Apr. 7, 2009) (citations omitted) ("Getting a clearance is not enough for access to classified information: there is . . . also a 'need to know' requirement."). Defense acknowledges the need-to-know standard governing access to classified information and yet disregards it without explanation. Motion at 1.

## C. Conclusion

CIPA's provisions are intended to protect national security from the foreseeable grievous harm caused by the unauthorized disclosure of classified information. Defendant has failed to establish why its procedures should be abandoned in connection with the aforementioned categories of information. Courts

14

are entrusted with "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. Courts' *ex parte* consideration of classified information and assessment of whether that information may be relevant and helpful to the defense is consistent with this balance. Accordingly, the government respectfully requests that defendant's motion regarding CIPA's *ex parte* provisions be denied.

## III. DEFENDANT'S MOTION FOR A BILL OF PARTICULARS (R. 71)

### A. Legal Standard

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires simply that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Seventh Circuit has held that an indictment is constitutionally sufficient if it: (1) states all the elements of the offense charged; (2) informs the defendant of the nature of the charge, enabling the defendant to prepare a defense; and (3) enables the defendant to plead the judgment as a bar to later prosecution for the same offense. *See, e.g.*, *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997); *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995); *United States v. Watkins*, 709 F.2d 475, 478 (7th Cir. 1983).

It is well-settled that "the defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981); *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983) ("[a] bill of particulars may not be used to compel the Government to disclose evidentiary details or to explain the legal theories upon which it intends to rely at trial") (citations and internal quotation omitted); *United*

*States v. Ansani*, 240 F.2d 216, 223 (7th Cir. 1957) (bill of particulars properly denied where defendant "attempted to secure legal theories, not facts"); *Kempe v. United States*, 151 F.2d 680, 685 (8th Cir. 1945) ("[t]he purpose of a bill of particulars is to secure facts, not legal theories.").

In accordance with the general proscription against compelled pretrial disclosure of the details of the government's evidence, courts have held that a motion for a bill of particulars should be denied when the indictment, combined with the discovery provided by the government, adequately informs the defendant of the charges. *See, e.g.*, *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013) ("a bill of particulars is unnecessary if the information the defendant seeks is readily available through alternate means such as discovery"); *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) ("Full discovery ... obviates the need for a bill of particulars."); *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978) (same); *United States v. Matthews*, No. 94 CR 333-18, 1997 WL 201581, *2-3 (N.D. Ill. Apr, 16, 1997) (same); *United States v. Stelmachowski*, 2018 WL 39959444 *3 (N.D. Ill August 21, 2018) (same).. A defendant is not entitled to a roadmap of the trial evidence or "all the details of how [the charges] will be proved." *United States v. Richardson*, 130 F.3d 765, 776 (7th Cir. 1997), *vacated on other grounds by* 526 U.S. 813 (1999) (citing *Kendall*, 665 F.2d at 135 (7th Cir. 1981)).

**B.    Analysis**

Defendant asks for the government to specify the "material support resources" and the "services" the defendant attempted to provide to ISIS. Because the indictment, along with the underlying criminal complaint and extensive discovery in

this matter, are more than sufficient to state the elements of the charges, and inform defendant of the nature of the charges so that he may prepare a defense, the motion for a bill of particulars should be denied.

Nonetheless, as a courtesy the government will provide in this response an answer to the defendant's query. Any further specificity is not required.

The definition of material support is expansive. It includes "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel and transportation, except medicine or religious material." Title 18, United States Code, Section 2339A(b)(1). The material support provided by the defendant is in the form of services to ISIS.

Service is a broad term that can encompass a range of conduct. "Neither § 2339A nor § 2339B provides a definition of 'service.'" *United States v. Wright*, 937 F.3d 8, 24 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 1283, 206 L. Ed. 2d 264 (2020).

The services the defendant attempted to provide to ISIS are the creation or modification of computer code or script, which he used in conjunction with channels established on the Social Media Application Telegram. The code was designed to copy ISIS propaganda material from Telegram channels containing the material to the Telegram channels he created. The services included, as part of the same course of conduct, the defendant's distribution and demonstration of the code to others whom

17

he believed were members of unofficial ISIS media organizations, as well as other ISIS supporters.

The defendant's services included the creation or modification of the code, the establishment of Telegram channels in which to utilize the code, the distribution of the code to others in order to spread the ability to preserve ISIS videos, and efforts to divert law enforcement's attention in order to protect the code and the Telegram channels from law enforcement interference. The defendant's purpose was to preserve ISIS material that was being deleted from the internet by Telegram, thereby thwarting ISIS's attempt to both recruit and terrorize online. The defendant was attempting to assist ISIS in perpetuating their message by circumventing Telegram's efforts. The defendant's distribution of the code or script was not done with a benign purpose of sharing the material but was done with the intent to propagate his efforts by others. The more people who followed his lead and used his code, the harder it would be for Telegram to remove the material from the internet.

## IV.  MOTION FOR IMMEDIATE DISCLOSURE OF FAVORABLE EVIDENCE (R. 72)

The defendant's motion for "immediate disclosure of favorable evidence," requests immediate production of any material that is "favorable to the defendant and is material to the issues of his guilt, innocence, or sentencing, or which bears upon the credibility of a government witness." R. 72 at 1. The defendant correctly anticipates that the government's response, as stated below, will stress the government's awareness of its discovery obligations. Defense states that its motion is to "ensure that the record of this defense request is abundantly clear in light of the government's ongoing discovery obligations." *Id*. The defendant's motion requests, in

18

detail, categories of information which pertain to *Giglio* information of potential government witnesses.

The government is aware of its discovery obligations, including those pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and the *Jencks* Act. The government is complying and will continue to comply with those obligations. In keeping with these obligations, the government has provided defendant with voluminous unclassified discovery, and his counsel with voluminous classified discovery, and every witness statement memorialized in an FBI 302 to date.

With regard to the *Giglio* material, defendant has failed to establish his immediate need for this information. To the extent the government has not already provided such information within the voluminous discovery, the government proposes to provide any information that can be used to cross examine a witness within fourteen days prior to the testimony of the witness. Fourteen days is more than enough time for defendant to digest the information and effectively use it to cross-examine the witness. *United States v. Chagoya-Morales*, No. 15 CR 124, 2015 WL 2128798*2 (N.D. Ill. May 4, 2015) (denying motion for production of *Giglio* information 45 days in advance of trial because "disclosure of *Giglio* information two weeks prior to trial is reasonable").

## V. DEFENDANT'S MOTION FOR DISCLOSURE OF EXPERT MATERIAL SIXTY DAYS PRIOR TO TRIAL (R. 73)

Defendant requests that the government provide disclosure of expert witnesses 60 days prior to trial. Pursuant to Federal Rule of Evidence 16(a)(1)(G), the

government must give defendant a summary of any expert witness. The rule does not specify when the notice must be given and defendant provides no explanation as to why he needs expert witness notice that far in advance of trial. The government has already informally identified to defense counsel the names of certain of its proposed experts and has described to defense counsel the general nature of that proposed testimony. The government proposes to provide expert witness notices 30 days prior to trial. That is a sufficient amount of time to identify any counter-expert defendant may wish to call as a witness and to file a *Daubert* motion. *United States v. Hunsche*, 19-CR-30117-SMY, 2020 WL 1472130 *1 (S.D. Ill March 26, 2020).

## VI. DEFENDANT'S MOTION FOR NOTICE AND PRODUCTION OF 404(B) MATERIAL (R. 74)

Defendant requests that the government provide notice and production of 404(b) material prior to trial. The parties have conferred and have agreed that the government will provide a 404(b) notice, if warranted, 30 days prior to trial.

## VII.  CONCLUSION

For the reasons set forth above, the government requests that the Court deny

defendant's pretrial motions.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:      /s/ *Barry Jonas*
BARRY JONAS
MELODY WELLS
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

ALEXANDRA HUGHES
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave.
Washington, D.C.

Dated: June 28, 2021