IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 CR 869 |
| | ) | Judge Robert W. Gettleman |
| THOMAS OSADZINSKI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S
"OMNIBUS RESPONSE" TO HIS PRETRIAL MOTIONS**

Defendant, **THOMAS OSADZINSKI**, by and through his attorneys, **STEVEN A. GREENBERG** and **JOSHUA G. HERMAN,** submit this consolidated Reply to the government's "omnibus response" to his pretrial motions. ("Response," Dkt. #85). Specifically, this Reply brief is made in support of Defendant's Motion for Notice and Production of Discovery Related to Surveillance (Dkt. #69); Defendant's Objections to Secret *Ex Parte* CIPA Litigation of Fourth Amendment Suppression Issues and motion for Disclosure to Cleared Counsel (Dkt. #70); Defendant's Motion for a Bill of Particulars (Dkt. #71); Motion for Immediate Disclosure of Favorable Evidence (Dkt. #72); Motion for Disclosure of Expert Material Sixty Days Prior to Trial (Dkt. #73); and, Motion for Notice and Production of Rule 404(b) Material (Dkt. #74).

I.  **The Court Should Order the Government to Provide Notice of Surveillance as Requested in Defendant's Motion. (Dkt. #69).**

In a controversial case involving the government's bulk collection of telephony metadata under Section 215 of the Patriot Act—a fact that was withheld from the defense attorneys in that case for years—the Ninth Circuit emphasized how, "[a]t a minimum, then, the Fourth Amendment requires notice to a criminal defendant when the prosecution intends to enter into evidence or otherwise use or disclose information obtained or derived from surveillance of that defendant

conducted pursuant to the government's foreign intelligence authorities." *United States v. Moalin*, 973 F.3d 977, 1000 (9th Cir. 2020). It is these constitutional principles of notice and fairness, not just statutory obligations, that animate Defendant's Motion for Notice and Production of Discovery Relating to Surveillance. (Dkt. #69). The government's Response to that Motion fails to even cite the *Moalin* case, much less attempt to directly address the Ninth Circuit's emphasis on the fundamental importance of providing notice of surveillance from a constitutional perspective. (Response, Dkt. #85, pp. 2-8).

The importance of receiving notice of surveillance is essential not only as a prerequisite for filing pretrial motions, but for defending the case at trial as well. It is an impossible task to defend against something that one is not permitted to examine. To be clear, the defense does not seek "limitless" discovery; a "clear, concise narrative" about the origins of the criminal investigation; or "every investigative technique used in the case" as the government suggests. (Response, Dkt. #85, pp. 2, 3). Instead, the defense seeks the bare-minimum notice of what surveillance authorities and tools were used during the investigation. The government also contends that "defense counsel analyzes the discovery and is then free to advance any suppression motions it wishes to make." (Response, p. 40). But that argument drives home the very point of Defendant's Motion: the defense cannot seek to suppress evidence obtained or derived from a surveillance authority that is kept secret.

The prosecutors' refusal to turn over any information related to the use of the Foreign Intelligence Surveillance Act ("FISA"), Executive Order (EO) 12333, and any other surveillance authority used but not disclosed in this case should not come as a surprise given the marching orders that they have undoubtedly received from intelligence agencies and the National Security Division to tightly guard the tools used to surveil U.S. citizens. The widespread uproar following the Snowden leaks still resonates in many ways. And, more recently, the controversies concerning

the Carter Page FISA applications discussed in Defendant's Motion and that resulted in highly critical DOJ OIG reports which found widespread problems with the FISA process, raise even more serious concerns about the propriety of the underlying surveillance authorities that were likely used in this case. (*See* Motion, Dkt. #69, pp. 9-14).

The government also has a history of withholding notice for FISA-related authorities, which is perhaps best evidenced by the controversy surrounding FISA Amendments Act, 50 U.S.C. §§ 1881a et seq. ("FAA"). The DOJ failed to provide *any* defendant with notice of FAA Section 702 surveillance for more than five years, even though Congress made notice of that surveillance compulsory. *See* 50 U.S.C. §§ 1806(c), 1881e(a). The government apparently did so based on a unilateral and unreviewable determination that the evidence was not "derived from" the surveillance.[1] The government altered course in 2013, but only after public outcry prompted the Solicitor General to conclude that the Justice Department's policy of not providing notice to defendants "could not be legally justified."[2]

Notably, the government here never represents that FISA was never used in this case. Rather, after listing the statutory "notice obligations," it merely states, "the government has informed the defendant that notice is not required in the instant matter." (Response, Dkt. #85, p. 5). The prosecutors can assert that "notice is not required" with relative immunity. There is no way for the defense to examine whether or not the evidence that will be used at trial is truly independent of a surveillance authorities and tools that have been hidden from the defense. It is

---

[1] *See* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. TIMES, (Oct. 16, 2013), http://nyti.ms/1r7mbDy (last visited Jul. 27, 2021) (describing how the Justice Department "long used a narrow understanding of what 'derived from' means" to improperly withhold notice from criminal defendants).

[2] *Id.*

also impossible to determine whether any representations regarding Defendant in any FISA application or material were false or recklessly made.

For instance, FISA surveillance cannot solely be based on protected First Amendment behavior. (50 U.S.C. §§1805(a)(2)(A), 1824(a)(2)(A)). A FISA order cannot issue absent a showing that the individual surveilled is an "agent of a foreign power." 50 U.S.C. §1801(b); 1804(a)(3). It is unfathomable how Defendant, the DePaul student from Park Ridge, could be portrayed as an "agent of a foreign power." Moreover, the government's arguments in its Response to Defendant's Motion to Dismiss, particularly those that focus on Defendant's contacts with groups and individuals that are *not* designated foreign terrorist organizations, raise serious questions about misrepresentations contained in any FISA application. Also of concern is how information about Defendant may have been gathered through what is known as "incidental" collection that avoids the FISA process; controversial "backdoor" searches that involve government queries of vast repositories information that may have been unlawfully collected; or, "reverse targeting," which occurs when the government's surveillance targets a "particular, known person reasonably believed to be in the United States" (50 U.S.C. § 1881a(b)(2)), but has nevertheless been used by the NSA "to conduct surveillance to collect Americans' international communications."[3]

Further, absent notice, the defense cannot test whether evidence at trial was "derived" from FISA surveillance—or even how the government interprets the term "derived." This criticism is in no way directed at the prosecutors in this case; nor is it meant to question their integrity in any

---

[3] *See* Letter from Deirdre M. Walsh, Dir. of Legislative Affairs, Office of the Dir. of National Intelligence, to Sen. Ron Wyden (June 27, 2014) ("ODNI–Wyden Letter") (acknowledging that various agencies, including the Federal Bureau of Investigation, conducted thousands of "backdoor searches" using U.S. identifiers in 2013 alone) (available at: https://bit.ly/3v67mVJ) (last visited Jul. 27, 2021).

manner whatsoever.[4]  But the reality is that the prosecutors themselves depend on information given to them by the very same intelligence agencies that were recently lambasted by the DOJ OIG, and have been criticized throughout the years in connection with the FISA process.[5]

The government also argues that 18 U.S.C. §3504 imposes no additional requirement to provide notice of surveillance.  (Response, Dkt. #85, p. 7).  While it could be argued that traditional FISA itself may not impose a separate obligation under §3504, that does not extend to surveillance not covered by FISA.  Indeed, in *United States v. Al Jayab*, 16 CR 181, Judge Ellis reached the same conclusion when she ordered the prosecutors to comply with §3504.  (*United States v. Al Jayab*, 16 CR 181, Dkt. #115, p. 80) (N.D. Ill., Ellis, J.) ("To the extent that al-Jayab seeks notice of other electronic surveillance not covered by FISA, however, the government must comply with §3504 as set forth above.").  The prosecutors should be ordered to comply with the same statutory standard here, and one must question their adamant resistance in simply and officially deny the use of any unlawful surveillance pursuant to §3504.  Presumably, it would be quite simple to confirm that FISA, EO 12333, Sections 702-705 of FISA, or any of the other specified surveillance authorities were *not* used in this case.

> II.     **The CIPA Process Should Not Be Used to Litigate Fourth Amendment Suppression Issues and Defense Counsel Should be Permitted to Participate in Section 4 Proceedings to the Fullest Extent Possible (Dkt. #70)**

Defendant's CIPA Motion focuses on the improper use of the secret, *ex parte* process to conceal surveillance of defendants or to otherwise obscure and hide potential Fourth Amendment suppression issues in a manner that shrouds the existence of unlawful surveillance.  (Dkt. #70).

---

[4] Indeed, undersigned counsel have handled numerous cases with the prosecutors over the years, including many national security cases, and offer no criticism at them here, either personally or professionally.
[5] Given its refusal to provide FISA notice in this case, the government's citation to the order in *United States v. Al-Safoo*, Case No. 18-CR-696, R. 222 (for which undersigned counsel Herman is co-counsel), is curious given that it actually provided notice of FISA surveillance in that case and, presumably, supplied Judge Blakey with the FISA materials for review prior to the issuance of his order.

This Motion is all the more timely given the Court's scheduling of an *ex parte* CIPA hearing with the government on August 6, 2021.

The government's Response effectively ignores Defendant's specific concerns regarding *ex parte* litigation of suppression issues; concealment of the sources of evidence and uses of surveillance authorities; and, making relevancy decisions all without defense participation. (Dkt. #85, pp. 10-15). Instead of addressing these specific concerns, the government merely repeats that CIPA is intended to protect against the unauthorized disclosure of classified evidence. (Dkt. #85, pp. 13, 14). But that does not address the principal concerns raised in the CIPA Motion. As such, counsel will not restate the detailed arguments set forth in Defendant's CIPA Motion, but will instead reiterate the government's claims of classified evidence cannot put Defendant in a worse position that he otherwise would be in absent that determination. As such, counsel request that the Court:

> 1) Order that any attempt by the prosecutors to use *ex parte* CIPA proceedings to determine Fourth Amendment suppression issues without any defense participation is improper;
>
> 2) Order disclosure, under an appropriate protective order and to cleared counsel, of all surveillance-related information that may be relevant or helpful to the defense, including information that would inform any motion to suppress based on surveillance the prosecutors have not disclosed; and,
>
> 3) Order disclosure, with appropriate redactions, of all briefing and orders concerning the legal standards, interpretations, or procedures that apply to the intelligence agencies or the prosecutor's use of CIPA to withhold information from Defendant's cleared counsel.

### III.     Motion for Bill of Particulars (Dkt. #71)

The government has responded to Defendant's Motion for a Bill of Particulars. (Motion, Dkt. #71; Response, Dkt. #85, pp. 15-18). Counsel have addressed the inadequacies of this Bill of Particulars in his Reply in support of Defendant's Motion to Dismiss. There, counsel highlight how the Bill of Particulars not only appears to be incomplete given the use of the qualifier,

"including," which, perhaps not coincidentally, similar to the problematic term "namely," in the Indictment. (Motion, Dkt. #71, p. 9). More importantly, as counsel have argued, the Bill of Particulars highlights and exacerbates the vague statutory term "services," including by indicating that one can violate the material support statute by providing "services" to a non-FTO, or by coordinating with or acting under the direction of a non-FTO. Thus, while the government's provision of a Bill of Particulars may moot the specific relief requested in the Motion itself, as to the substance of the Bill of Particulars, counsel would adopt the concerns articulated in their Reply in support of Defendant's Motion to Dismiss.

    **IV.**    **Motion for Disclosure of Favorable Evidence. (Dkt. #72).**

Defendant moved for the immediate disclosure of favorable evidence, including evidence that must be produced under *Giglio v. United States*, 405 U.S. 150 (1972). (Dkt. #72). The government commits to producing *Giglio* material 14 days prior to trial. In a case as complex as this that will involve lengthy trial preparation, if the government is in possession of *Giglio* material, then there is no good reason to continue to withhold the material.

    **V.**    **Motion for Disclosure of Expert Material Sixty Days (Dkt. #73)**

Defendant requested disclosure of expert witnesses within sixty days prior to trial. (Dkt. #73). While formal notice and disclosure as required by Rule 16(a)(1)(G) has not yet been provided, the government has informally notified counsel of two expert witnesses that it anticipates calling at trial and has provided certain information regarding the background of these witnesses. The government has agreed to provide the requisite expert disclosure no later than 30 days prior to trial. Given the complexity of the case and the use of two potential experts, counsel submit that the government should provide formal expert disclosure 45 days prior to trial—unless the Court determines that earlier disclosure is necessary to accommodate potential *Daubert* litigation that may very well be necessary upon review of the government's Rule 16 disclosure.

### VI. Motion for Notice and Disclosure of 404(b) Material (Dkt. #74)

Defendant withdraws his request for notice and production of Rule 404(b) material 45 days prior to trial. (Dkt. #74). As noted in the government's Response, the parties have agreed that the government will provide any such notice 30 days prior to trial.

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that that the Court grant the pretrial motions set forth above or otherwise order the relief sought in those motions.

Respectfully submitted,

/s/ Steven A. Greenberg
**STEVEN A. GREENBERG,**

/s/Joshua G. Herman
**JOSHUA G. HERMAN**
Attorneys for Defendant

**GREENBERG TRIAL LAWYERS**
53 West Jackson Blvd., Suite 1260
Chicago, Illinois 60604
(312) 879-9500

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
(312) 909-0434
jherman@joshhermanlaw.com

## **CERTIFICATE OF SERVICE**

Joshua G. Herman, Attorney at Law, hereby certifies that the foregoing was served on July 27, 2021, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Joshua G. Herman
53 W. Jackson Blvd., Suite 404
Chicago, IL 60614
(312) 909-0434
jherman@joshhermanlaw.com