IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 19 CR 869 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| | ) | |
| THOMAS OSADZINSKI | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

On November 18, 2019, defendant Thomas Osadzinski was arrested pursuant to a criminal complaint charging him with attempting to provide material support and resources to a Foreign Terrorist Organization ("FTO") in violation of 18 U.S.C. § 2339B. On December 12, 2019, the grand jury returned a superseding indictment, charging defendant with one count of providing material support to the Islamic State of Iraq and ash-Sham ("ISIS") in violation of 18 U.S.C. § 2339B(a)(1). Defendant has filed the following motions: (1) to dismiss the indictment for vagueness and unconstitutionality (Doc. 65); (2) to suppress evidence obtained as a result of 18 U.S.C. § 2703(d) (Doc. 67); (3) for notice and production of discovery relating to surveillance (Doc. 69); (4) objecting to secret ex parte Classified Information Procedures Act ("CIPA") litigation and for disclosure of materials to cleared defense counsel (Doc. 70); (5) for a bill of particulars (Doc. 71); (6) for disclosure of favorable evidence (Doc. 72); (7) for disclosure of expert material 60 days before trial (Doc. 73); and (8) for disclosure of Rule 404(b) material (Doc. 74). For the reasons stated below, defendant's motions are denied with certain minor exceptions.

## I.     Motion to Dismiss the Indictment (Doc. 65)

"When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must 'view all facts in the light most favorable to the government.'" United States v. Jones & Schimenti, 383 F.Supp.3d 810, 817 (N.D. Ill. Apr. 2019) (quoting United States v. Yashar, 166 F.3d 873, 880 (7th Cir. 1999)). Defendant argues that the indictment should be dismissed as void for vagueness because it is unclear what "services" defendant provided, and because the alleged conduct is protected speech under the First Amendment. The court will address each argument in turn.

### a.  Void for Vagueness

"The void-for-vagueness doctrine requires that a criminal statute define an offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited so as to avoid arbitrary and discriminatory enforcement." United States v. Cook, 914 F.3d 545, 549 (7th Cir. 2019). "'What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.'" Id. at 549-50 (quoting United States v. Williams, 553 U.S. 285, 306 (2008)). The court considers "whether a statute is vague as applied to the particular facts at issue," rather than in the abstract. Holder v. Humanitarian Law Project, 561 U.S. 1, 18-19 (2010).

Defendant argues that the term "services" as applied to him is void for vagueness because the term "would not put a reasonable person on notice" that the charged conduct constituted provision of material support to ISIS. The crux of defendant's argument is that the service he performed is not in and of itself illegal, and therefore the term "service" as applied to his conduct

is "ambiguous," "open-ended" and could lead to "arbitrary and discriminatory enforcement." The court is unconvinced.

As applied to the defendant, the material support statute is not unconstitutionally vague. The term "service," as set forth in the statute, is not ambiguous, and "a person of ordinary intelligence would understand the term 'service' to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." Humanitarian Law Project, 561 U.S. at 21. To violate § 2339B by providing a "service," the government must prove that defendant engaged in a "concerted activity, not independent advocacy," that was done in coordination with, or at the direction of, an FTO, or at least an attempt to do so. Id. at 23-24. As alleged in the complaint and the indictment, defendant's conduct of creating a computer script to prevent ISIS videos from being deleted, and translating ISIS videos into English for pro-ISIS media organizations, clearly constituted "concerted activity." Thus, the term "service" is not vague as applied to defendant.

Defendant's vagueness argument fails for several additional reasons.[1] First, defendant was aware that ISIS was a designated FTO and that providing support to ISIS was illegal. Indeed, as documented in the complaint and the government's response brief, defendant repeatedly chronicled his efforts to avoid detection from the FBI, including swallowing his password for the computer that contained the relevant computer script. Also, during the execution of a search warrant at defendant's apartment, the FBI found a copy of the criminal complaint from Untied States v. Schimenti & Jones (17 CR 236, N.D. Ill.), which detailed that ISIS is an FTO and identified the elements of a § 2339B offense. Defendant's knowledge of

---

[1] The facts cited below are taken from the indictment and, as mentioned above, are presumed true for purposes of the instant motion.

3

ISIS's designation, as well as his knowledge of the statute, undercuts defendant's argument that he would not understand that any services provided to ISIS were illegal.

Second, the indictment alleges that defendant intended to perform a valuable service for ISIS. Defendant believed his computer skills would provide a service to ISIS by helping them preserve videos that defendant knew were used to recruit members and to intimidate civilians.[2] Defendant was aware that social media platforms frequently remove ISIS videos and believed that law enforcement investigated individuals who downloaded ISIS content. More importantly, defendant specifically expressed a desire to preserve ISIS videos through his computer script; not for his own viewing pleasure, but for "brothers" who support ISIS. Defendant attempted to commit what he called "media jihad," which he believed was the "highest form of jihad." These facts demonstrate that defendant intended to act as a part of the organization and for the organization's benefit, not merely as an independent advocate.

Finally, defendant argues that the government has not alleged that defendant performed services at the direction of, or in coordination with, ISIS. As a threshold matter, defendant has been charged with "attempting to provide material support and resources to a Foreign Terrorist Organization." Accordingly, the government is not required to allege or establish actual connection or direction with ISIS, so long as the government presents evidence that defendant attempted to do so. The government has certainly alleged as much. Even if the government had not charged attempt, "[u]nder the plain language of the statute, Defendant need not interact with

---

[2] Defendant suggests that his computer skills were poor, and that he was thus unable to provide any meaningful service to ISIS. However, whether defendant provided services with any proficient skill is irrelevant for questions of vagueness, notice, and the soundness of the indictment.

4

an actual or purported member of the FTO to be charged with violating § 2339B."[3]  Jones & Schimenti, 383 F.Supp.3d at 817.  Here, defendant informed an OCE that he was attempting to help ISIS by creating the computer script, defendant interacted with ISIS media organizations and translated videos for those organizations, and defendant pledged loyalty to the leader of ISIS in a video to OCE4.  The government has clearly alleged that defendant performed services at the direction of, and in coordination with, ISIS.

For these reasons, the court declines to dismiss the indictment as vague.

**b.  First Amendment**

Defendant makes two arguments under the First Amendment: (1) his conduct—namely, writing a computer script—is protected, political speech; and (2) downloading and viewing videos of a violent nature is protected.

Regarding the first argument, the Supreme Court has distinguished between independent advocacy (protected speech) and "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization" (unprotected speech).  Humanitarian Law Project, 561 U.S. at 26.  Indeed, the Supreme Court has clarified that when material support takes the form of speech, "the statute is carefully drawn to cover only a narrow category of speech, to, under the direction of, or in coordination with foreign groups that the speaker knows to be a terrorist organization."  Id.  The Seventh Circuit has further clarified the issue, stating that, "[u]nder Section 2339B…[defendants] may, with impunity, become members of Hamas [an FTO], praise Hamas

---

[3] Section 2339B makes it unlawful to provide, attempt to provide, or conspire to provide material support or resources to an FTO, without any mention of a requirement of actual interaction.  Further, courts have consistently applied the statute in situations where the defendant did not meet any actual members of an FTO.  See, e.g., United States v. Hammadi, 737 F.3d 1043, 1045 (6th Cir. 2013) (affirming conviction under Section 2339B where the defendant believed he was donating to a third-party fundraising group that supports various FTOs but was actually interacting with a CHS). Consequently, defendant's argument that he was interacting with non-FTOs, such as "unofficial ISIS media organizations, as well as ISIS supporters," fails to establish that the term "services" is unconstitutionally vague as applied in this case.

5

for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas. Section 2339B prohibits only the provision of material support (as that term is defined) to a terrorist organization. There is no constitutional right to provide weapons and explosives to terrorists….” Boim v. Quranic Literacy Institute and Holy Land Foundation for Relief and Development, 291 F.3d 1000, 1026 (7th Cir. 2002); see also, U.S. v. Warsame, 537 F.Supp.2d 1005, 1014 (D. Minn. 2008) (“[Section] 2339B prohibits the conduct of providing material support and resources to FTOs… Section 2339B does not prohibit membership in Al Qaeda [an FTO], nor does it prohibit persons from espousing or sympathizing with the views of Al Qaeda….”).

Defendant argues that his conduct—such as praising ISIS and sharing ISIS propaganda videos—is protected political speech. Given the Seventh Circuit’s spectrum of political speech on the one hand, and providing weapons to terrorists on the other, defendant’s argument is not surprising. However, defendant diminishes his most concerning and relevant conduct. Defendant was not merely praising ISIS on his own social media accounts or “vigorously advocating the goals and philosophies of [ISIS],” Boim, 291 F.3d at 1026, but he was also providing translation services and building a computer script that prevented ISIS videos from being deleted—a service he believed was “the highest form of jihad.” The program benefitted the FTO by quickly and efficiently re-uploading videos, operating at a speed and scale much greater than could any one individual. The scale and sophistication of this script transforms his conduct from an individual expressing an opinion, to providing a service to an FTO. And, based on the allegations in the indictment and the government’s proffered bill of particulars,[4] there is no question that this was done with the intent to aid ISIS.

---

[4] As discussed below, although the government opposed defendant’s motion for a bill of particulars, in its response it provided additional factual allegations that effectively constitute a bill of particulars.

6

Defendant's second argument relies on <u>Brandenburg v. Ohio</u>, 395 U.S. 444 (1969), to claim that defendant cannot be prosecuted for the violent nature of the videos he sought to preserve.  Defendant suggests that the court apply the <u>Brandenburg</u> test to determine if defendant's conduct is protected speech.  However, that test is inapplicable here.  The content of the ISIS videos, violent or otherwise, is largely irrelevant to the charges in the instant suit.  Rather, it is defendant's computer script and attempt to provide services to ISIS that form the basis of the indictment.

 The complaint and indictment charge defendant "with conduct beyond just voicing support for ISIS."  <u>United States v. Jones and Schimenti</u>, 383 F.Supp.3d 810, 817 (N.D. Ill. Apr. 2019) (declining to dismiss indictment on First Amendment grounds).  Consequently, defendant's alleged conduct is not protected speech, and his motion to dismiss the indictment on First Amendment grounds is denied.

## II.     Motion to Suppress Evidence Obtained from § 2703(d) (Doc. 67)

The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, permits the government to obtain a court order authorizing the collection of "non-content information" from computer network service providers.  18 U.S.C. § 2703(c).  "Before <u>Carpenter</u>,[5] the government could either seek a warrant for this information or it could 'obtain a court order for such disclosure under subsection (d) of this section.'"  <u>United States v. Castro-Aguirre</u>, 983 F.3d 927, 934 (7th Cir. 2020) (citing 18 U.S.C. § 2703(c)(A), (B)).  Subsection (d) specified that a court order could issue "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that…the records or other information sought, are

---

[5] <u>Carpenter v. United States</u>, -- U.S. --, 138 S.Ct. 2206 (2018).

relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). "That standard is significantly lower than the probable-cause requirement for a warrant." Castro-Aguirre, 983 F.3d at 934.

In this suit, the government applied for an order pursuant to § 2703(d) to obtain information related to Google, Microsoft, Instagram, Twitter, Facebook, Tumblr, Ask.fm, Wickr, Yahoo, Snapchat, Skype, Tango, Amazon, eBay, and WhatsApp accounts. In support of its motion, the government submitted an affidavit from an FBI Special Agent, which cited to statements by Individual A, who was interviewed by the FBI. Individual A had known defendant for at least four years and stated that defendant regularly downloaded ISIS propaganda and communicated with ISIS supporters. The application was approved on July 5, 2018. The government's second motion to obtain information pursuant to § 2703(d) was granted on August 17, 2018, and a third was granted on August 22, 2018. Finally, the Eastern District of Virginia granted a § 2703(d) order, and the government has provided the returns from that order to the defense.

Defendant moves to suppress the evidence obtained from the § 2703(d) orders. In doing so, defendant makes three arguments: (1) the government's application lacked specific and articulable facts; (2) the lack of a warrant violated the Fourth Amendment; and (3) the historical nature of the obtained information violates Carpenter. Essentially, defendant asks this court to extend the "narrow" holding of Carpenter to information other than cell-site location information ("CSLI"). Courts across the country have been faced with similar requests; almost all have denied them. See, e.g., United States v. Morel, 922 F.3d 1, 8 (1st Cir. 2019) ("Carpenter did not announce a wholesale abandonment of the third-party doctrine"); United States v. Contreras, 905 F.3d 853, 857 (5th Cir. 2018) (noting that "the third-party doctrine continues to apply to

'business records that might incidentally reveal location information,' including…bank records" (quoting <u>Carpenter</u>)); <u>United States v. Wellbeloved-Stone</u>, 777 Fed. App'x 605, 607 (4th Cir. 2019) ("[defendant] cites no post-<u>Carpenter</u> authority extending <u>Carpenter's</u> rationale to IP addresses or subscriber information"). The court declines to extend <u>Carpenter's</u> reasoning to the information at issue.

Even if an extension of <u>Carpenter</u> was warranted, "the government acted in good faith when, instead of securing a warrant, it relied on the court order." <u>Castro-Aguirre</u>, 983 F.3d at 935 (citing <u>United States v. Leon</u>, 468 U.S. 897, 919 (1984)). If the government acted in good faith, then suppression is not required. <u>Id.</u> In July and August of 2018, the Supreme Court had just decided <u>Carpenter</u>, emphasizing that the decision "is a narrow one." <u>Carpenter</u>, 138 S.Ct. at 2220. No courts had held that <u>Carpenter</u> applied to information other than CSLI. It was reasonable for the government to proceed under to § 2703(d), instead of securing a warrant, to obtain non-CSLI information. Consequently, the government acted in good faith and suppression is inappropriate.

Finally, the government's application contained specific and articulable facts showing that there were reasonable grounds to believe that the records were relevant and material to an ongoing criminal investigation. The court is unpersuaded by defendant's arguments to the contrary. The application described, in detail, facts provided by the anonymous tipster, including that defendant regularly downloaded ISIS propaganda and communicated with ISIS supporters. None of this information is general or conclusory.

For these reasons, defendant's motion (Doc. 67) is denied.

9

### III.    Motion for Notice and Production of Discovery Relating to Surveillance (Doc. 69)

On January 23, 2021, defense counsel submitted a formal request for discovery from the government.  This request included any surveillance conducted pursuant to the government's foreign intelligence authorities.  On April 7, 2021, the government responded: "The government has provided you, either in unclassified discovery or classified discovery, any discoverable material, except to the extent any material has been submitted to the Court pursuant to CIPA Section 4.  Moreover, it is the government's position that a FISA notice is not required in this matter."

Defendant has now moved for an order "compelling the prosecutors to provide [to cleared defense counsel] notice and discovery productions of all surveillance, electronic, digital, physical or otherwise, that it or any other intelligence agencies, acting on its behalf, used to monitor Defendant or obtain information about Defendant."  In making this request, defendant cites the Fourth, Fifth, and Sixth Amendments to the Constitution, 18 U.S.C. § 3504, and Fed. R. Crim. P. 12 and 16.  Defendant argues that the government's April 7, 2021, response is obfuscation intended to "disclose as little as possible," and that notice under the Foreign Intelligence Surveillance Act ("FISA") is required.[6]

Notice concerning the government's intent to use evidence in a criminal case is generally governed by Rule 12 and 16.  The purpose of Rule 12 is to "provide the defendant with sufficient information to file the necessary suppression motions."  United States v. Ishak, 277 F.R.D. 156, 158 (E.D. Va. 2011).  "Thus, the government's obligation under Rule 12(b)(4)(B) ends when it has made disclosures that sufficiently allow the defendant to make informed decisions whether to

---

[6] Defendant's arguments regarding the Fourth, Fifth, and Sixth Amendment are quite general, and do little to advance defendant's motion.  The court thus addresses only the more specific and more relevant arguments under Rule 12, 18 U.S.C. § 3504, and FISA.

file one or more motions to suppress." Id. The government argues that it has met its obligations under the rules, and the court agrees. Defense counsel has analyzed the discovery provided and filed the relevant motions. Defendant's request for notice under Rule 12 is denied.

Defendant next argues that notice is required under 18 U.S.C. § 3504. The relevant portion of 18 U.S.C. § 3504 provides: "In any trial, hearing, or other proceeding before any court…[u]pon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act." Beyond the threshold requirements for notice, 18 U.S.C. § 3504 applies only where an "unlawful act" has occurred. Defendant argues that the government must respond to his request under § 3504, but defendant has not provided any allegations regarding an unlawful act, let alone any basis for such an allegation. There is no reason for the court to assume an unlawful act has occurred, and defendant has provided none. Consequently, the government need not provide notice under 18 U.S.C. § 3504.

Finally, defendant argues that FISA expressly requires the government to provide notice of surveillance. The government responds that FISA's notice requirements under 50 U.S.C. § 1806(f), 1825(d), and 1881(e), apply only if the government, (1) "intends to enter into evidence or otherwise use or disclose," (2) "against any aggrieved person,'" (3) in a "trial, hearing or other proceeding in or before any court, department officer, agency, regulatory body, or other authority of the United States," (4) any "information obtained or derived from," (5) "electronic surveillance of that aggrieved person." 50 U.S.C. §§ 1806(c) and 1825(d); see also United States v. Moalin, 973 F.3d 977, 1000 (9th Cir. 2020) (FISA notice provisions are limited, requiring notice to a criminal defendant only when the prosecution intends to enter into evidence or

11

otherwise use of disclose information obtained or derived from FISA). According to the government, "[o]nly where all five criteria are met must the government provide notice that the United States intends to use or disclose such information." The government argues that those five criteria are not met in the instant case because it does not intend to use any evidence that may have been derived from FISA. The court agrees. Consequently, FISA notice is not required in this case.

Defendant's motion for notice and production of discovery relating to surveillance (Doc. 69) is denied.

### IV. Motion Objecting to Secret <u>Ex Parte</u> CIPA litigation (Doc.70)

Defendant filed a motion objecting to secret <u>ex parte</u> CIPA litigation of Fourth Amendment Suppression issues and requesting disclosure of CIPA materials to cleared defense counsel. Defense counsel seeks to participate in the CIPA hearings and briefings, and further requests disclosure of the government's arguments in support of non-production.[7]

Both CIPA Section 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the government to submit <u>ex parte</u> motions seeking in camera review of classified information that may be discoverable in a criminal case. Indeed, <u>ex parte</u>, in camera consideration of government motions to restrict discovery under CIPA Section 4 have been consistently upheld. <u>See, e.g.</u>, <u>United States v. Amwai</u>, 695 F.3d 457, 472-73 (6th Cir. 2012) ("[E]very court that has considered this issue has held that CIPA permits <u>ex parte</u> hearings"); <u>United States v. O'Hara</u>, 301 F.3d 563, 568 (7th Cir. 2002) (finding the district court acted within its authority when conducting in camera, <u>ex parte</u> review of whether classified information was

---

[7] Defense counsel also requests leave to submit an <u>ex parte</u> and under seal pleading outlining the theories of the defense to assist the court in determining whether CIPA materials are relevant or helpful to the defense. With the court's leave, defense counsel has already done so (Doc. 82). Consequently, defendant's request is denied as moot.

discoverable); United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988) (ex parte proceedings concerning national security information are appropriate under CIPA Section 4). As CIPA's legislative history recognizes, because the "government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." H.R. Rep. 96-831, pt. 1, at 27 n. 22. Defendant cites no authority or precedent in support of his objections to the CIPA procedures, and acknowledges that his arguments "have not been adopted by other district courts." Thus, he has not demonstrated that the court should depart from these established procedures.

Further, defense counsel's possession of a security clearance does not alter the court's analysis. The Seventh Circuit has noted, in no uncertain terms, that defense counsel's security clearance does not alleviate national security concerns. See United States v. Daoud, 755 F.3d 479, 484 (7th Cir. 2014) (district court operated "as if disclosing state secrets to cleared lawyers could not harm national security. Not true. Though it is certainly highly unlikely that [defense counsel] would, Snowden-like, publicize classified information in violation of federal law, they might in their zeal to defend their client…inadvertently say things that would provide clues to classified material.").

The court sees no need to depart from the established CIPA procedures and will proceed to conduct those procedures ex parte and in camera.[8] Defendant's motion (Doc. 70) is denied.

## V.     Motion for Bill of Particulars (Doc. 71)

Defendant requests a bill of particulars, arguing that the indictment fails to identify the alleged "material support resources" and "services" the defendant attempted to provide to ISIS.

---

[8] The court has set an in camera proceeding on August 6, 2021.

13

Defendant argues that a bill of particulars is necessary to adequately prepare his defense and protect him against double jeopardy.

The key question for a bill-of-particulars analysis is "whether the defendant was sufficiently apprised of the charges against him in order to enable adequate trial preparation." United States v. Vaughn, 722 F.3d 918, 927 (7th Cir. 2013). "[A] bill of particulars is unnecessary if the information the defendant seeks is readily available through alternate means," such as discovery or a criminal complaint. United States v. Biancofiori, 2018 WL 372172, at *5 (N.D. Ill. Jan. 11, 2018) ("Although the Second Superseding Indictment may lack particulars, the Criminal Complaint and discovery propounded in this case are more than adequate."); see also, United States v. Hernandez, 330 F.3d 964, 975 (7th Cir. 2003) ("[A] bill of particulars is not required when the information a defendant needs to prepare his defense is available through some other satisfactory form, such as discovery") (internal citations omitted).

Here, the superseding indictment lacks many particulars; however, the criminal complaint and affidavit attached thereto is more than sufficient. The criminal complaint is detailed—spanning 82 paragraphs—and specifically states the acts alleged against defendant and provides a general outline of the government's case. Further, the government has provided extensive discovery to defendant. To the extent any questions remain regarding the nature of the "services" and "material support resources" allegedly provided by defendant, the government has answered those questions in its response brief in a manner that effectively constitutes a bill of particulars.

The court finds that defendant has sufficient information to adequately prepare a defense and protect against double jeopardy. Consequently, defendant's motion for a bill of particulars (Doc. 71) is denied.

14

## VI.     Motion for Disclosure of Favorable Evidence (Doc. 72)

Defendant's motion for "immediate disclosure of favorable evidence" requests production of any material that is "favorable to the defendant and is material to the issues of his guilt, innocence, or sentencing, or which bears upon the credibility of a government witness." Essentially, defendant asks the government to comply with its discovery obligations under Fed. R. Crim. P. 16, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and the Jenks Act.  In its motion, defendant correctly anticipates the government's response, which is that the government is aware of its discovery obligations and will comply or continue to comply with those obligations.  The government also states that is has provided defendant voluminous classified and unclassified discovery, including every witness statement memorialized in an FBI 302, and that it will provide Giglio material 14 days prior to the testimony of the relevant witness.

Due to the complexity of this case, the court directs the government to provide this information 30 days prior to trial.  With that exception, defendant's motion (Doc. 72) is denied.

## VII.    Motion for Disclosure of Expert Material 60 days Before Trial (Doc. 73)

Defendant requests that the government disclose expert material 60 days before trial.  The government responds that it has already provided the names of certain expert witnesses as well as general summaries of their proposed testimony, and that 30 days is sufficient.  The parties appear to be unable to come to an agreement on this issue.  Due to the complexity of this case, the government is instructed to provide disclosure of expert materials 45 days before trial.  With that exception, Defendant's motion (Doc. 73) is denied.

VIII.   **Motion for Disclosure of Rule 404(b) Material (Doc. 74).**

Finally, defendant requests that the government provide notice and production of 404(b) material prior to trial.  Apparently, the parties have conferred and have agreed that the government will provide a 404(b) notice, if warranted, 30 days before trial.  Consequently, defendant has withdrawn the motion (Doc. 74).

<u>**CONCLUSION**</u>

For these reasons, and with the limited exceptions discussed above, the following motions are denied: (Doc. 65); (Doc. 67); (Doc. 69); (Doc. 70); (Doc. 71); (Doc. 72); and (Doc. 73).  The § 404(b) motion (Doc. 74) is withdrawn.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: July 29, 2021**

16