**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 CR 869 |
| | ) | Judge Robert W. Gettleman |
| THOMAS OSADZINSKI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S
MEMORANDUM IN SUPPORT OF AMENDED JURY INSTRUCTIONS**

Defendant, **THOMAS OSADZINSKI**, by and through his attorneys, **STEVEN A. GREENBERG** and **JOSHUA G. HERMAN,** hereby submits this Response to the Government's Memorandum in Support of Amended Jury Instructions (Dkt. #143). As set forth below, Defendant preserves his objection to Amended Instruction No. 21; proposes revised instructions that would replace Amended Instructions Nos. 22 and 23 (attached hereto as Exhibit A); and objects to the government's addition to Defense Instruction No. 1, the First Amendment instruction previously accepted by the Court.

At the August 28, 2021, pretrial conference, the Court made several initial rulings regarding disputed jury instructions. In particular, the Court modified four instructions offered by the government (Nos. 19, 21, 22, and 23), and agreed to provide a modified version of Defendant's First Amendment instruction (Defendant's Instruction No. 1).

On October 10, 2021, the government submitted its Amended Jury Instructions, which propose additional modifications to Instruction Nos. 21, 22, and 23, as well as a new paragraph at

the end of Defendant's Instruction No. 1. The Court ordered the defense to respond to the government's memorandum by October 12, 2021. This is that Response.

**Instruction No. 19**

Defendant has no objection to the revised instruction.

**Instruction No. 21**

The government has added the names of an additional aliases for ISIS, and two other entities that in March 2019 were designated by the State Department as aliases of the designated foreign terrorist organization ISIS (Al Hayat Media Center and Amaq News Agency). Defendant previously objected to similar language regarding ISIS itself. (Dkt. #100, p. 4). Defendant continues to object, and his objection now includes the addition of the new aliases and entities.

**Instruction Nos. 22-23**

Defendant objects to the government's Amended Instruction Nos. 22 and 23. As an initial matter, and after further review of the instructions, defense counsel submit that dividing these important material support instructions into two separate instructions is confusing and misleading. In *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23 (2010) ("*HLP*"), the Supreme Court defined the term "services" by referring to "concerted activity, not independent advocacy." The Court then emphasized that independent advocacy was not prohibited, but that advocacy "performed in coordination with, or at the direction of, a foreign terrorist organization" was illegal. *Id*. at 24. The indented excerpt reflected at page 4 of the government's brief quotes the key passage in *HLP* on these points. The Defendant's proposed instructions that are set forth below track that language.

Additionally, and as reflected in Defendant's proposed instructions set forth below, the government's addition of the second sentence to its Amended Instruction No. 22 should be removed. That sentence states as follows: "The term "services" includes the performance of work commanded or paid for by another or act done for the benefit of another, or at the command of another."

In *HLP* the Supreme Court parenthetically referenced some of that language when it cited Webster's dictionary definition of the term "services." *HLP*, 561 U.S. at 53.[1] But the Supreme Court's reference to the dictionary definition of "services" was only meant to illustrate its understanding that "services" had to be provided "'*to* a foreign terrorist organization.'" *Id*. (quoting 18 U.S.C. §2339B) (emphasis in original). Thus, the partial dictionary definition of "services" was only designed to explain the need to prove "concerted activity" that was done in coordination with, or at the direction of, the FTO, as opposed to "independent advocacy." Nothing in *HLP* suggests that the passing reference to the definition of "services" was meant to serve as an authoritative instruction to the jury.

Moreover, the jury will be able to understand the term "service." It is not a technical term that is separately defined in the statute. The Seventh Circuit has emphasized that it is unnecessary to define terms with common meanings. *See United States v. Olofson*, 563 F.3d 652, 660 (7th Cir.

---

[1] Webster's Third International Dictionary includes twenty (20) separate definitions for the term "services." The government's instruction references only two of those definitions (Nos. 2 and 5(b)). For sub-definition 5(a), an "act done for the benefit of another, or at the command of another," the following usage example is provided: "impose some [service] on me for they love." (Shakespeare, Love's Labour Lost, Act V, Scene 2). For further context, subsection 5(b) provides the following definition, "the constancy, attentions, or devotion of a lover for his lady." This context, and the fact the Dictionary offers eighteen (18) additional definitions for "services" underscores why include an incomplete definition of "services" is improper.

2009) ("We have already noted that the common meaning of 'automatically' is readily known by laypersons and thus a specific instruction defining the term for the jury was unnecessary. Similarly, a person of ordinary intelligence would have understood the common meaning of the term—"as the result of a self-acting mechanism"—and thus would have had fair warning of the relevant features of a weapon that §5845(b) covers and that §§ 922(*o*) and 924(a)(2) regulate."). Similarly, the term "services" should not be given a separate definition, particularly one that is incomplete and thus misleading.[2] Again, the Supreme Court offered a brief and incomplete definition of "services" merely to illustrate why services must be provided *to* the foreign terrorist organization.

Accordingly, Defendant proposes that the government's Amended Instruction Nos. 22 and 23 be presented in a single instruction. To that end, Defendant offers below and also attached as Exhibit A the following two alternative instructions, both of which are fully consistent with *HLP*:

Version 1:

> The term "material support and resources" could include services. In this context, the term "services" requires concerted activity, not independent advocacy. It is for you to determine whether any services were performed in coordination with, or at the direction of, a foreign terrorist organization. If the services were independent activity or advocacy, then they are not prohibited.

Version 2:

> The term "material support and resources" could include services. The term "services" refers to concerted activity, not independent advocacy. Services provided as material support to a foreign terrorist organization involves advocacy or activity performed in coordination with, or at the direction of, a foreign terrorist organization. Independent activity or advocacy, however, is not prohibited.

---

[2] Counsel recognize that the defense initially proposed a version of the instructions using similar language. Counsel had planned on raising this issue with the Court to voice their concern over that language in favor of the instructions set forth above.

**Defense Instruction No. 1**

The Court agreed to provide Defendant's Instruction No. 1, the First Amendment instruction, except for the final paragraph. That final paragraph (and the entire instruction for that matter) was taken verbatim from the instruction given in *United States v. Schimenti and Jones*, 17 CR 236 (N.D. Ill. Wood, J.), Dkt. #189. The government's Amended Defense Instruction No. 1 adds an additional paragraph that effectively instructs the jury to disregard the First Amendment—which is not only an overarching constitutional concern but, more importantly, is reflected in a specific, statutory safe harbor that is accurately quoted in the Defendant's Instruction. (*See* 28 U.S.C. §2339(B)(i)).

This government's addition is borrowed from *United States v. Mehanna*, 735 F.3d 32 (1st Cir. 2013), where the defendant was convicted of providing material support for travelling overseas to find a terrorist training camp as well as for providing translations of Al Qaeda material. As quoted in the First Circuit's opinion, the disputed instruction read that was read to the jury was as follows:

> Now, this is important. Persons who act independently of a foreign terrorist organization to advance its goals or objectives are not considered to be working under the organization's direction or control. A person cannot be convicted under this statute when he's acting entirely independently of a foreign terrorist organization. That is true even if the person is advancing the organization's goals or objectives. Rather, for a person to be guilty under this count, a person must be acting in coordination with or at the direction of a designated foreign terrorist organization, here, as alleged in Count 1, al Qa'ida.
>
> You need not worry about the scope or effect of the guarantee of free speech contained in the First Amendment to our Constitution. According to the Supreme Court, this statute already accommodates that guarantee by punishing only conduct that is done in coordination with or at the direction of a foreign terrorist

> organization. Advocacy that is done independently of the terrorist organization and not at its direction or in coordination with it does not violate the statute.
>
> Put another way, activity that is proven to be the furnishing of material support or resources to a designated foreign terrorist organization under the statute is not activity that is protected by the First Amendment; on the other hand, as I've said, independent advocacy on behalf of the organization, not done at its direction or in coordination with it, is not a violation of the statute.

*Mehanna*, 735 F.3d at 48.

The government has adopted only the second paragraph of that rather colloquial instruction given in *Mehanna*. But here, unlike *Mehanna*, that additional paragraph immediately follows instructions that accurately state the law on the First Amendment. It will utterly confuse the jury to be instructed on the First Amendment, and then told, "don't worry about that." Moreover, the final sentence of the government's addition—"This means that advocacy performed in coordination with, or at the direction of, ISIS is not shielded by the First Amendment"—is particularly unnecessary and confusing. It was not given to the jury in *Mehanna*, as it is absent from the above-quoted excerpt.

The government will be more than free to argue that activity done in coordination with or under the direction of ISIS is material support and the defense will not argue to the contrary. A separate instruction on why the First Amendment and the statutory safe harbor do not matter and should be ignored is not necessary and would be improper.[3]

---

[3] Should the Court overrule Defendant's objection on this point, then there are specific revisions that should be made to the government's amended paragraph that counsel will raise. For instance, if any version of the government's proposed addition is given, then the Court should also include a paragraph like the final *Mehanna* instruction that begins with, "Put another way…".

6

Respectfully submitted,

/s/ Steven A. Greenberg
**STEVEN A. GREENBERG,**

/s/Joshua G. Herman
**JOSHUA G. HERMAN**
Attorneys for Defendant

**GREENBERG TRIAL LAWYERS**
53 West Jackson Blvd., Suite 1260
Chicago, Illinois 60604
(312) 879-9500

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
(312) 909-0434
jherman@joshhermanlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was served on October 11, 2021, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                             /s/Joshua G. Herman
                                             **JOSHUA G. HERMAN**
                                             Attorneys for Defendant

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
(312) 909-0434
jherman@joshhermanlaw.com