UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
               Plaintiff,       )
                                )
        vs.                     ) No. 19 CR 869
                                )
THOMAS OSADZINSKI,              ) Chicago, Illinois
                                ) September 28, 2021
               Defendant.       ) 12:37 p.m.

TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS

BEFORE THE HONORABLE ROBERT W. GETTLEMAN

APPEARANCES:
(Via Videoconference)


For the Plaintiff:        HON. JOHN R. LAUSCH, JR.
                          United States Attorney
                          BY:  MR. BARRY JONAS
                               MS. MELODY WELLS
                          Assistant United States Attorneys
                          219 South Dearborn Street, Fifth Floor
                          Chicago, Illinois  60604
                          (312) 353-5300


                          MS. ALEXANDRA HUGHES
                          Trial Attorney, Department of Justice
                          National Security Division
                          950 Pennsylvania Avenue, NW
                          Washington, D.C.  20530


Official Court Reporter:  NANCY L. BISTANY, CSR, RPR, FCRR
                          219 South Dearborn Street, Room 1706
                          Chicago, Illinois 60604
                          (312) 435-7626
                          *nancy_bistany@ilnd.uscourts.gov*

```
 1    APPEARANCES:  (Continued)
      (Via Videoconference)
 2

 3    For the Defendant:        GREENBERG TRIAL LAWYERS
                                BY:  MR. STEVEN GREENBERG
 4                              53 West Jackson Boulevard, Suite 1260
                                Chicago, Illinois  60604
 5                              (312) 879-9500

 6
                                LAW OFFICE OF JOSHUA G. HERMAN
 7                              BY:  MR. JOSHUA G. HERMAN
                                53 West Jackson Boulevard, Suite 404
 8                              Chicago, Illinois  60604
                                (312) 909-0434
 9

10    ALSO PRESENT:            MS. AMY JOSEPHINE FOSTER-GIMBEL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Proceedings heard in open court and via videoconference:)

2                THE CLERK:  19 CR 869, USA versus Thomas Osadzinski.

3                If government counsel can all state their names for

4       the record, then all defense counsel, the defendant.

5                MR. JONAS:  Good afternoon, Your Honor.

6                Barry Jonas for the United States.

7                MS. WELLS:  Good afternoon, Your Honor.

8                Melody Wells for the United States.

9                MS. HUGHES:  Good afternoon, Your Honor.

10               Alexandra Hughes for the United States.

11               THE COURT:  Defense counsel?

12               MR. HERMAN:  Good afternoon, Judge.

13               Josh Herman on behalf of Mr. Osadzinski.

14               MR. GREENBERG:  Good afternoon, Judge.

15               Steven Greenberg on behalf of Mr. Osadzinski also,

16      and I've got my law clerk, Josie Foster-Gimbel, who might be

17      listed as "Amy," also online.

18               THE COURT:  Okay.  Mr. Osadzinski is online, too?

19               MR. GREENBERG:  Yes.

20               THE DEFENDANT:  Sorry.  I had it on mute.

21               THE COURT:  I don't see Mr. Osadzinski.

22               He's on there?  All right.  I can see you on my

23      clerk's monitor, so that's fine.

24               All right.  Good afternoon, everybody.  We're here

25      today -- I have an agenda that I want to go through with you,

1    and then you can let me know if there's anything I have missed.

2    I have an awful lot of paper here that you guys have filed, so

3    I just want to go through them.

4    There's really 10 items on this agenda at this point.

5    The first is -- and I don't have the docket numbers on all of

6    these.  I have it on some of them.

7    The first is the defendant's motion to preclude

8    testimony of Mr. Zelin.  That's document 104.  And I cannot

9    rule on that at this point because I have reviewed the

10   government's Rule 16 submission, and I find it to be deficient.

11   It is basically or largely a list of topics rather than

12   opinions, as the rule requires, and I am unable to rule on

13   whether those opinions are properly -- will be admitted until I

14   get a proper Rule 16 submission by the government.

15   It has to be the actual opinions and not just the

16   topics that he's going to testify about.  We can guess what

17   he's going to say, but I'm not going to guess.

18   I'll say this, just generally speaking, that I do

19   believe the government has a right to put on an expert witness

20   to testify about what ISIS is, what it does, what its goals

21   are, and some of its activities, because some of the other

22   evidence in the case is certainly going to go into that, and

23   not everybody among the public knows that much about ISIS

24   necessarily.

25   So I do think it is a proper subject of expert

1    testimony, but we do have to have a proper Rule 16 submission.
2    And I'm going to ask the government to provide one by the end
3    of the day tomorrow so that we can talk about this when we next
4    get together before trial, which I'm going to have to set today
5    as well.
6              MR. GREENBERG:  Your Honor, this is -- I don't know.
7    Do we have to say our names on this or can the court reporter
8    tell --
9              THE COURT:  No, the court reporter can see you.
10             MR. GREENBERG:  Okay.  We -- we are not disputing
11   that ISIS is a designated FTO and all of that.  So what they're
12   about -- we're conceding that element of the charge.
13             So what they're about, how they operate, what they do
14   we don't think is -- I just want to flag this for, I guess, our
15   future discussion -- is really necessary in this case, because
16   no one is going to stand up there and say anything good about
17   them.  And no one is going to argue to the jury that they do
18   good deeds or they do good works or that, you know,
19   Mr. Osadzinski didn't know who they were or anything like that.
20             So at that point it just becomes telling the jurors
21   how bad they are when the Court as a matter of law in the jury
22   instruction is going to tell the jurors that they're bad.
23             THE COURT:  Okay.  I understand your point, but,
24   again, I think the government is entitled to put on some
25   evidence about what they are and what they do, and it can --

1   they can cross that line.  But I've got to see what those

2   specific opinions are before I can actually rule on that.

3           MR. GREENBERG:  Okay.

4           THE COURT:  From what I've read from the government's

5   submissions and a lot of these motions that are before me

6   today, they recognize the fact that they can cross the line and

7   unnecessarily inflame the jury or prejudice the jury by putting

8   too much in it.

9           For instance, they're not going to show any

10  beheadings and any of the acts of violence that I've seen on

11  some of those videos.

12          So I think they understand that, but I've got to know

13  what his opinions are, in particular, before I can agree or

14  disagree with you that some of them may cross that line.  So

15  that's why I need to see that.  It's more work for me, and it's

16  more work for everybody, but I need that.  And the submission

17  that I got just doesn't do it, so that's the --

18          MR. JONAS:  Your Honor, we're --

19          THE COURT:  We're going to get back together Friday

20  afternoon, and we're going to make definite rulings on this

21  thing, but that's the best I can do right now.

22          I understand the government's point; I understand the

23  defense point.  But I just can't be definitive at this point

24  without a proper Rule 16, and I don't want any more argument on

25  it.  That's how I feel.  I've thought a lot about it.

1    The next matter is the defendant's motion with

2  respect to the preliminary exhibit list, and that is -- I don't

3  know.  I've got too many pieces of paper here.

4    THE CLERK:  107.

5    THE COURT:  Okay.  It's document 107 for the record.

6  I'm going to deny that based on the government's response.

7  Again, the government has agreed not to push this too hard and

8  to basically limit the type of exhibits they are going to show

9  to the jury.

10    These are documents and videos and other pieces of

11  evidence in the possession of the defendant.  They go to his

12  state of mind, his intentions, which is of paramount importance

13  in this case.  So I think that they're -- even though some of

14  them precede the actual indicted conduct here, they do put it

15  into context, and I think the government is entitled to do

16  that.

17    The one exhibit that I've seen is that picture of the

18  plane flying into the building on 9/11.  I want that omitted.

19  And the reason is, it might otherwise be admissible because

20  it's part of what Mr. Osadzinski was looking at, but it's so

21  close to the anniversary of the 9/11 disaster that I just think

22  it would be too inflammatory, and it's unnecessary.  It's

23  cumulative.  I would like anything about 9/11 kept out.  I just

24  think it's too prejudicial, more prejudicial than probative.

25    MS. WELLS:  Your Honor -- oh, pardon me.

1      THE COURT:  So take those out.

2           The other exhibits are, again, taken from Mr.

3  Osadzinski's -- I may be mispronouncing his name; I hope I'm

4  not -- but anyway, they were taken from his phone, his

5  possessions.  It's stuff that he had with him, and I think that

6  it goes -- it's direct evidence of his intention and state of

7  mind and everything else.  And that's part of his defense here,

8  I realize, and that's why the government is allowed to use

9  those exhibits.

10          So I'm denying it with the exception of the 9/11

11  issues -- the 9/11 exhibits.

12          MR. JONAS:  Your Honor, it's Barry Jonas.

13          I believe we already removed that picture.

14          THE COURT:  Okay.

15          MR. JONAS:  So I don't think that's in our list

16  anymore.

17          THE COURT:  You know, it was hard for me to look -- I

18  know you gave us a thumb drive today, and it was hard for me

19  to -- this morning, because I had other -- I had a full morning

20  this morning.  I tried to look to see what you had omitted and

21  what you had included compared to the original list.  So you

22  know how I feel about that, and I think that I'm sure that

23  won't be a problem.

24          The jury forms we gave you today, those are the ones

25  we're going to use.  I don't like this method at all.  I really

1    like the old days -- I hope we get back to them soon -- where

2    each juror can get up and answer a list of questions.  But

3    given the realities of our procedures in light of the pandemic,

4    we will have to do it that way.

5            I'll explain that to the jury.  I give them fairly

6    extensive preliminary -- I give the venire pretty extensive

7    preliminary instructions.  And, of course, I give the jury

8    itself more instructions after that.  So I will have to -- I

9    will explain to them how we're doing this.

10           There is going to be a separate room that the venire

11   is in.  We're going to bring 17 people at a time into the

12   courtroom.  I'll be able to basically address everybody at one

13   time because it will be piped into the other room.

14           And then we're going to ask each juror to step up to

15   the podium, ask them if there's anything that they want to say

16   that they haven't already answered.

17           On Friday, since you're going to get their -- we're

18   both -- we're all going to get their questionnaires on Thursday

19   night.  So Friday morning we're all going to have to be looking

20   at their answers to the questions and seeing if there's anybody

21   that we are going to strike without even bringing them in or if

22   there's any follow-up-type questions we want to ask them, but

23   we will be prepared to do that.

24           We'll go through the entire panel like I already

25   explained to you, and then I will give you as many extra

1     strikes as we can.  We may actually have more than 52 people on

2     the venire.  We're calling in 60, and if they all show up,

3     we'll go through all 60.

4                 MR. GREENBERG:  Your Honor --

5                 THE COURT:  It will probably take most of the first

6     day, if not all the first day.

7                 MR. GREENBERG:  Your Honor, there's nowhere for them

8     to sign the form.  Did you want somewhere a signature line or

9     just swear --

10                THE COURT:  No, they've never done that before.

11                MR. GREENBERG:  Okay.  Okay.

12                THE COURT:  They'll all be sworn.  So, you know --

13    and it's under penalty of perjury.  So, you know, we don't ask

14    them to sign their names.

15                So that's --

16                (Discussion off the record.)

17                THE COURT:  Oh, yes.  Claire is reminding me of a lot

18    of things here today, so she'll be interrupting me a lot today.

19                She should have copies of these for you by 4:00 on

20    Thursday.  So if you pick them up -- I won't see them until

21    much later because she's going to have to drop them off at my

22    house, but she will be bringing -- between 4:00 and 5:00, you

23    can give her a call or shoot her an email and ask her if she's

24    ready, because she has to make copies -- she has to collate

25    these, make copies of them, and everything else.

1      So we are going to be calling the panel in

2  alphabetically, and then as I mentioned to you before, after we

3  take everybody out for cause or for peremptories, the first 12

4  people on the scrambled list will be the jury, and the next 3

5  will be the alternates.

6      And I think we have -- we're going to set up the

7  courtroom so that we can get 15 people in here -- 15 jurors in

8  here.  The witness is going to have -- the witnesses are going

9  to be WebEx'd into the monitors, so everybody will be able to

10  see the witnesses.  We don't have to put the witness in the

11  jury box the way some of my colleagues have been doing it,

12  because that really does put the juror at the far corner at a

13  disadvantage.  They're doing that in order to prevent a

14  line-of-sight obstruction.

15      So we're going to -- and this is the way other judges

16  have done it; Judge St. Eve did it in my courtroom; Judge

17  Kendall did it in my courtroom -- where we set up a WebEx

18  camera right in front of the witness box so that they can take

19  the witness box, take their mask off, and testify.  And

20  everybody will be able to see them.  Of course, the lawyers are

21  going to be able to see them the way they usually see witnesses

22  in the witness box.  So that's good.

23      And then if we have any questions, they go over to

24  the sidebar here, and they get the questions.  They read the

25  questions that we have for them, and then they can answer those

1    questions.  And only the lawyers, the defendant, and I will be

2    able to -- and, of course, my staff -- will be able to hear the

3    answers to those questions through our headphones.

4         It's not ideal, but it's the way we have to do it

5    because of COVID.

6         All right.  So that takes care of voir dire unless I

7    have missed something.

8         (Discussion off the record.)

9         THE COURT:  Oh, yes.  So I think I said that.

10        On Friday we're going to get back together for an

11   hour or so, and any questions you want to ask any of the

12   particular jurors or follow up or if you want to move to strike

13   any of them at that point, I'll have that list -- I'll have

14   that stack with me.  I'll have the list with me, and we can

15   talk about that on Friday afternoon.  So maybe we can actually

16   smooth things out a bit for purposes of jury selection on

17   Monday.

18        The next thing on my agenda is the jury instructions.

19   I do appreciate the effort you put into it and the cooperation

20   that's obvious from this.  So let me just go through the

21   instructions where there was some disagreement.

22        It basically begins with instruction No. 19 on page

23   20.  So I'll refer to these as -- by their instruction number.

24        I will give the government's instruction 19 except on

25   the first paragraph, I'm going to omit the last sentence of

that paragraph, because we already say he's charged with that by the indictment. We don't have to say it a second time that it's a violation. I think that's laying it on a little thick.

No. 20 there was no problem with.

No. 21, I would give the government's except in that second paragraph, I would stop after the words "Secretary of State" in the second sentence, and I would omit the rest of that. The rest of that will come in as evidence, but I don't think it's an appropriate -- I don't think it's appropriate to instruct the jury on evidence that they're going to hear during the trial.

And, again, you know, this is all based on today. It could change during the trial.

No. 22, the defendant has added a second sentence to that, and I think that sentence is -- the term "services" means the performance of work commanded or paid for by another or act done for the benefit of or at the command of another, we're going to add that to No. 22. I think that's appropriate.

On 24, I'm going to give the government's -- I'm sorry -- 23, rather, I'm going to give the government's 23 except in the second line before -- right after "services," I want you to add the word "only." So it reads "only if you find that he has knowingly acted or attempted." I think that satisfies some of the problems that the defense appears to have had with that.

1        Okay.  There are just two more here -- just one more,

2   actually.

3        I'm going to give the defendant's instruction 1 on

4   the First Amendment except I'm going to omit the last

5   paragraph.  That's argumentative.  I think it's something that

6   you could certainly argue to the jury, but I think educating

7   the jury about what the First Amendment says is appropriate.

8        So that's the only rulings I had on the jury

9   instructions.

10       The government's motion for protective order, which

11  is document 113, we are going to grant by agreement based on

12  the agreed instruction that you have submitted to me.  And I

13  appreciate the cooperation that went into that.  I think it's

14  an appropriate instruction.  Remind me to give it at the

15  appropriate time.  I could just see forgetting about it.

16       All right.  The jury voir dire questions I've already

17  dealt with.

18       The defendant's motion to permit counsel to conduct

19  internet research into the panel is going to be denied.  I

20  think this is an interesting issue, and maybe we're behind

21  technology here, but the cases that have allowed this have

22  all -- one of them, most of them have been civil; and two,

23  they've told the jurors that this is going to happen.  If you

24  tell the jurors this is going to happen in advance, they're

25  going to omit anything -- I guess they have a way to omit stuff

1  on social media that they can omit.  And then they're going to

2  be more likely to be tempted to do research on their own if

3  they think they're being researched.  I just don't think it's

4  appropriate.

5       We have -- I agree with the government's

6  characterization of this.  We have a tried-and-true method of

7  picking juries.  It's a rare thing that I'm disappointed with

8  juries.  I've conducted hundreds of jury trials in my career

9  here.  And I think even though we're doing it differently,

10  we're going to be able to pick a fair and impartial jury

11  without this type of research on them.  So I am going to deny

12  that.

13       The government's motion *in limine* about -- it's

14  document No. 121 -- about nullification, et cetera, I agree

15  with the defendants that this is just unnecessary.  These are

16  experienced, well-respected lawyers we have for the defense

17  here.  I think they know the rules of the game.  The rules of

18  the game will be enforced by the Court, and I don't think

19  there's any need to issue an order directing them to play by

20  the rules.  So I'm going to deny that.

21            MR. JONAS:  Your Honor --

22            THE COURT:  I'm going to deny that without prejudice.

23  You can make your objections.  As Mr. Greenberg said -- or

24  whoever wrote the brief -- as the defense has said, if they

25  step over that line during trial, we'll deal with it by

1    objection, but I don't intend to -- I don't expect them to do

2    so.  But if they do, they'll be called to the carpet for it.

3            MR. JONAS:  Your Honor, if I can just briefly say one

4    thing on that.

5            I think while we've styled it as a motion regarding

6    jury nullification, really (inaudible) regarding the defense

7    that they want to -- that Mr. Greenberg raised in our

8    understanding that they may want to present that we believe is

9    irrelevant and that that defense goes to jury nullification.

10   So it's really the underlying defense that they want to argue

11   that we think is irrelevant.

12           Whether or not certain investigative techniques were

13   used really doesn't matter here.  We can wait until they raise

14   it and then argue it at trial -- you know, make our objections

15   at trial.  I just want to flag for the Court that's why we are

16   filing our motion.

17           We have every faith that Mr. Greenberg and Mr. Herman

18   would not intentionally make any jury nullifications arguments.

19           THE COURT:  No, I understand.  And you picked that up

20   when they said that they were retaliating because he wouldn't

21   cooperate or something like that, but some of that is in your

22   tape.  I mean, some of the conversation is in the evidence that

23   the government is going to present where he says, you know,

24   "I'm not ready yet" or whatever "or the FBI is looking at me."

25   That's going to be part of the government's evidence.

1    What they make of that, obviously they're not

2  permitted to argue or question the government's motivation

3  behind it, and I think they know that.

4    It's a fine line there, perhaps, but certainly that

5  evidence is going to come in.  And maybe during

6  cross-examination there may be a point where an objection would

7  be appropriate or maybe not.  I don't know.  I can't just rule

8  on it hypothetically.  That's why I'm denying it without

9  prejudice at this point.  We'll just --

10    MR. GREENBERG:  I want to know why you presumed I

11  didn't write it.

12    THE COURT:  I didn't presume that.

13    MR. GREENBERG:  Okay.

14    THE COURT:  Should I?

15    MR. GREENBERG:  I didn't, but you guessed

16  (inaudible).

17    THE COURT:  From now on that presumption will stay

18  with us throughout the case.

19    Okay.  I come to my last item here, and that's the

20  motion about OCE 1.  Preliminarily there was a motion for leave

21  to file those documents under seal, which is 127.  We'll grant

22  that.  I don't think that's controversial.  We will file them

23  under seal.  It's hard to read some of these.

24    But, again, I know the defense hasn't replied to the

25  government's written response to this motion.  I guess I could

1    give you a few minutes if you want to reply to that, because

2    this just came in Sunday night, and then we just got the

3    government's today.

4            Is there anything you want to say about this, either

5    Mr. Greenberg or Mr. Herman, that I haven't already read?

6            MR. HERMAN:  Judge, I think that our reply -- to

7    write a reply here would echo many of the arguments we made

8    regarding the images, but this one I think would highlight some

9    of the points that the government didn't raise, which is the

10   attent -- that this is so attenuated from the charged conduct

11   here time-wise.

12           The government has a couple of points about how

13   Mr. Osadzinski referenced computers, but they're so transitory

14   that it's -- just on its face, we think that the testimony

15   bears very little relevance, I think, to the charged conduct

16   here.  The intent element is pretty stretched.

17           It looks like it's the government making -- on page 2

18   that whenever Mr. Osadzinski says "brothers," he means ISIS

19   here; and therefore, it's relevant to the charged.

20           I think you're well equipped to rule on this, and I

21   think even a brief reference to TATP and explosives is -- it

22   doesn't matter if it's a brief reference or if the witness

23   details the chemical composition of the compound.  You know,

24   the fact of the matter is is that Mr. Osadzinski did not even

25   attempt to commit an act of violence.  And what this does is

1    leaves a very distinct impression that he was planning on doing
2    so.

3          This isn't a case about violence.  This is a case
4    about a computer script.

5          THE COURT REPORTER:  I'm sorry.  Can you repeat that,
6    Josh?  You broke up a little bit.

7          "It's not a case about" --

8          MR. HERMAN:  It's not a case about violence.  It's
9    about a computer script, as the bill of particulars is
10   abundantly clear.

11         Mr. Green -- I don't know if Mr. Greenberg has
12   anything to -- much wiser to add.

13         MR. GREENBERG:  No, no.  Nothing.

14         THE COURT:  Mr. Jonas, do you want to say anything,
15   give you another shot?

16         MR. JONAS:  Your Honor, I'm going to let Ms. Hughes
17   respond, because she wrote -- it's her witness, and she wrote
18   the response.  I do think that there is something she would
19   like to add.

20         MS. HUGHES:  Yes, Your Honor.  So, first of all, I
21   think the government would take a bit of issue with the
22   argument that this is attenuated from the conduct.  The last
23   contact between OC 1 and the defendant was on June 29th, and
24   then merely two months later he is sharing the script that he
25   has then developed for the purposes of supporting ISIS.

1    So his statements in June saying, "I'm studying
2  computer skills because I hope to some day support ISIS" are
3  central to our case, and our element of intent and knowledge
4  are further bolstered by this evidence. And also the fact that
5  the defendant is in a weapons chat room and that he is aware of
6  the kinds of terrorist activities ISIS conducts, that also is
7  the government's burden here.

8    And under *Old Chief,* the government has an obligation
9  and a right to put on its intent evidence regardless of any
10  stipulations the defense would be willing to make.

11    And so we take issue both with the attenuation
12  arguments that the defense has put forward and also that this
13  is irrelevant. We think that this is pretty central and the
14  fact that he is spit-balling ways to assist ISIS, that he's
15  saying he's studying, that he's collecting information, that
16  conduct is exactly the type of conduct that ultimately
17  undergirds the charges here.

18    And we think ultimately the defense is really making
19  a relevancy argument, because the communications here include
20  no violent images. They are very relatively innocuous compared
21  to the rest of the elements, and relying solely on a relevancy
22  argument that we think the government wins this one.

23    MR. JONAS: Your Honor, if I could just correct one
24  thing. It wasn't two months later that he sent the script. It
25  was awhile later. But, I mean, I agree with a hundred percent

1  what Ms. Hughes has to say.  I just want to make sure the

2  timeline is -- the timeline is accurate.

3           THE COURT:  Well, how long was it?

4           MR. JONAS:  So he engaged with OC 1 in June of 2018.

5  Then -- but he also says several times, maybe not to OC 1, but

6  I know there were comments that he made about laying low

7  because the FBI was watching him.  And I'm paraphrasing.

8           He then started engaging with OC 2 in February of

9  2019.  So there was probably about six, seven months -- six

10  months or so between OC 1 and OC 2.  And then the CHS was also

11  February of 2019 when he first -- when they first met.

12           MR. HERMAN:  Judge, to answer your question, it

13  wasn't until October of 2019 that he sent the script.  So

14  that's 14 months later that he sent the script -- showed the

15  script to the CHS, and then I believe it wasn't until November

16  of 2019 that he sent the script to CHS 4 or around that time.

17           And just to make one other point.  Our argument is

18  just not relevance.  It's also 403.  As soon as we start

19  talking about a weapons chat room and explosive recipe and

20  videos for explosives, we're squarely in 403 land.

21           MR. JONAS:  Judge, Your Honor, one more -- one more

22  thing.  Just, you know, getting into the timeline, it was

23  August of 2019 that he first sent this document called

24  "Operation Heralds of the Internet" to OCE where he laid out

25  pretty much the plan.  It's his -- excuse me -- lack of a term,

1   the manifesto for the plan.  So clearly it was in the works way

2   before August of 2019.

3            Our point is the June conversations with OCE 1 shows

4   the defendant's mind-set and what he wants to do with regard to

5   ISIS, and he wants to help them.  And that is, as Your Honor

6   pointed out, central to a lot of the issues in this case, the

7   defendant's intent and knowledge.

8            THE COURT:  I agree.  I agree.  I think that the

9   government has stated they're not going to go into weapons

10  building or what TATP means or anything like that.  This

11  witness isn't going to say that.  He's just going to introduce

12  the conversations.

13           In a way, it's the genesis of this whole journey that

14  the defendant is accused of having embarked on that I think is

15  direct relevance -- that has direct relevance to his state of

16  mind, his intention, his knowledge of who he's dealing with and

17  what they are and what they do.  So I'm denying the motion.

18           Again, you know, if you cross the line, there will be

19  a 403 objection at trial.  This is based on these papers and

20  not anything that happens at trial.  If we get a witness that

21  does cross that line -- sometimes witnesses will do that even

22  though they've been asked not to by the lawyers -- that's what

23  judges are here for.  So I'm not worried about the defendant's

24  ability or disposition about making objections when

25  appropriate.  But right now, just looking at it generically or

1    based on these papers, I'm denying it.

2           All right.  That's my agenda.  So I would like to get

3    together on Friday, and I'd like to do it telephonically, if

4    possible, since I have a medical appointment that day, and I'll

5    be working from home -- a medical appointment that afternoon.

6    And honestly, I hadn't planned -- I hadn't planned to be

7    working on Friday.

8           So we're all going to have to spend some time looking

9    at these questionnaires, obviously, when we get them from

10   Claire on Thursday, and we'll do as much as we can.  Obviously,

11   we'll have the weekend to look at them as well.

12          So I'm not -- I'm not telling you that if you don't

13   mention something on Friday you can't mention it again on

14   Monday when we begin jury selection.

15          MR. JONAS:  Your Honor, I have two issues I'd like

16   to -- or questions I'd like to raise when --

17          THE COURT:  Wait one second.

18          Claire -- you know, this is all -- this is all virgin

19   territory to me.

20          So when the juror -- let's say juror No. 6 gets up

21   there and has written something on the questionnaire that we

22   want to ask them about -- you know, they have a law enforcement

23   officer in their family or they travel to the Middle East or

24   something like that, who knows -- and when they come over to

25   sidebar here, we then put on our earphones.  And if you want to

1    ask questions, there's white noise so the rest of the people in

2    the courtroom and the rest of the people in the other courtroom

3    won't hear anything we talk about.  It will just be us.  But

4    the juror -- the veniremen will be able to see on the screen

5    that's over here at sidebar anything that we've talked about

6    beforehand.

7          So if there is something that you want to flag

8    between Friday when we get together and Monday, you could email

9    Claire and say, "We are very concerned about juror No. 15

10   because X, Y, and Z," so that we could actually, perhaps, even

11   have a discussion about that before the jurors come into the

12   courtroom.  That way the juror won't see what the concern was.

13         But very often, even under our normal circumstances,

14   when we ask a juror -- you know, when we used to do this the

15   old-fashioned way, we ask juror No. 6 to come over, and I say,

16   "Counsel would like to talk to you about X, Y, or Z" or "I

17   would or I have a question about X, Y, or Z."  So it's not like

18   the juror doesn't know why we're calling them over there to

19   begin with.

20         And there may be a lot of vanilla answers on some of

21   these.  Remember, they've all been qualified for time, so

22   hopefully that will be not a problem.

23         Hold on.  Nancy wants to talk to me.

24    (Discussion off the record.)

25         THE COURT:  Nancy is telling me that she actually can

1    blank out the realtime feed on the tablet that the jurors are

2    going to actually see the questions we want to ask them about.

3    So what I just said may not be a real problem.

4              Okay.  So, Mr. Jonas, you had something else to say?

5              MR. JONAS:  Yes, Judge, two questions.  One is for

6    clarification.

7              Earlier on when you were discussing the jury

8    selection, you mentioned that witnesses having a camera in

9    front of them and then everyone seeing them on the WebEx.  Were

10   you talking about the witnesses during the trial or were you

11   talking about --

12             THE COURT:  Yes, during trial.

13             MR. JONAS:  -- jury selection?

14             THE COURT:  During trial.

15             MR. JONAS:  So I just want to -- I just want to

16   remind the Court that when the OCEs and CHS testify, we don't

17   want a camera -- we don't want a feed that goes outside the

18   courtroom.  So if that's an internal --

19             THE COURT:  No, it won't go outside the courtroom.

20             MR. JONAS:  That's fine then, Judge.

21             The other question I have --

22             THE COURT:  And just remember when we get to that

23   point, you know, to remind us to make sure that we have all the

24   technology in place to accommodate that problem.

25             MR. JONAS:  We will.  We certainly will.

1    My other question is if there is a government

2    shutdown Thursday night at midnight, does that impact at all

3    the trial?

4    THE COURT:  In past government shutdowns, the one

5    that I remember -- you were probably in high school -- we did

6    not shut down.  The judiciary has its own budget, and we were

7    able to continue functioning pretty well.

8    The only problem that could occur is, your witnesses,

9    for instance, if they're traveling, if somehow they wouldn't be

10   able to travel and that sort of thing, but the court itself is

11   perfectly capable of functioning for a fair period of time.

12   You might remember we had one in '96, I think --

13   (Discussion off the record.)

14   THE COURT:  Well, we had one with Trump, they're

15   telling me, but that wasn't very long, as I recall.

16   THE CLERK:  Yeah, it was.

17   THE COURT:  It was?  They're telling me it was.  I

18   don't remember.  If I don't remember, that means --

19   MR. JONAS:  The Trump one was --

20   THE COURT:  -- it wasn't a problem.

21   MR. JONAS:  -- I remember we didn't get paid.

22   MR. GREENBERG:  That was --

23   MR. JONAS:  We missed out on paychecks on the Trump

24   one.

25   MR. GREENBERG:  That was because there was so much

1    other noise going on all the time.

2            MR. JONAS:  I appreciate that.

3            THE COURT:  Okay.  So hopefully that won't be a

4    problem.

5            MR. JONAS:  Okay.  That was all the questions I had,

6    Your Honor.  I don't know if Ms. Wells or Ms. Hughes have

7    anything they want to ask.

8            MS. WELLS:  No, thank you, Your Honor.

9            THE COURT:  Anything from the defense?  I always hate

10   to ask that question.  Anything else?

11           MR. GREENBERG:  Nothing --

12           MR. HERMAN:  No, Judge.

13           MR. GREENBERG:  -- from the defense, Judge.

14           THE COURT:  Okay.  Thank you, folks.

15           MR. GREENBERG:  Thank you.

16           THE COURT:  So let's set a time.  I was going to say

17   2:00.  Let's make it 1:30 if we can, because I do have a

18   medical appointment that afternoon, and I don't want to be

19   pushed.  So 1:30, and I think we should be able to do it over

20   the phone.

21           Is that agreeable to the defense and the government?

22           MR. JONAS:  It's agreeable to the government, Your

23   Honor.

24           MR. HERMAN:  Yes, Judge.

25           MR. GREENBERG:  Yes, Your Honor.

1          THE COURT:  So we'll make sure that Mr. Osadzinski

2    can get on the phone with us.  And we'll see each other again

3    1:30 on Friday and hopefully start our jury selection, get our

4    jury picked on the 4th.

5          All right, folks.  Thank you very much for your hard

6    work.

7          MR. JONAS:  Thanks, Judge.

8          THE COURT:  And we'll move on from here.  Thank you.

9          MR. HERMAN:  Thank you, Judge.

10         MS. WELLS:  Thank you, everyone.

11     (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     C E R T I F I C A T E

2

3

4          I, Nancy L. Bistany, certify that the foregoing is a

5     complete, true, and accurate transcript from the record of

6     proceedings on September 28, 2021, before the HON. ROBERT W.

7     GETTLEMAN in the above-entitled matter.

8

9

10    /s/ Nancy L. Bistany, CSR, RPR, FCRR          April 11, 2022

11         Official Court Reporter                   Date
           United States District Court
12         Northern District of Illinois
           Eastern Division
13

14

15

16

17

18

19

20

21

22

23

24

25