IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19 CR 869 |
| ) | Judge Robert W. Gettleman |
| THOMAS OSADZINSKI, ) | |
| ) | |
| Defendant. ) | |

DEFENDANT'S SUPPLEMENTAL RULE 33 MOTION

Defendant, Thomas Osadzinski, submits the following as a supplement to his previously filed Rule 33 motion[1]:

The Defendant argued in a pretrial motion that his words and conduct were permissible First Amendment activity. That was a defense at trial, the focus of his opening statement, his cross-examination, and his closing argument. And there was no doubt that he was entitled to a First Amendment defense; the law carves out an exception for First Amendment activities and the Court appropriately gave a First Amendment instruction. But all of this was gutted when the prosecutor began his rebuttal argument by telling the jurors that the First Amendment did not apply to conduct (*i.e.*, the code), rather it only applied to spoken words: "but the First Amendment in this case is alive and well, and nobody is violating the defendant's First Amendment rights, because the defendant hasn't been charged for something he said. He's been charged for something he did." (Vol. 7, Tr., p. 1414:12-15). That

---

[1] Defendant recognizes that this issue should have been raised in the original motion and apologizes for not including it.

was not a correct statement of law. An immediate objection was overruled, followed thereafter by the Court commenting that it would continue to overrule the defense objections. (Vol. 7, Tr., p. 1423:13-16). The only effect this could have had upon the jurors was to reinforce the Government's incorrect statement of law.

Computer code is undeniably protected by the First Amendment if the coding does not instruct on how to violate the law. Here it merely shared information that was itself protected.

In the seminal case, *United States v. Corley*, 273 F.3d 429, 449-50 (2d Cir. 2001), the court wrote:

> Computer programs are not exempted from the category of First Amendment speech simply because their instructions require use of a computer. A recipe is no less "speech" because it calls for the use of an oven, and a musical score is no less "speech" because it specifies performance on an electric guitar. Arguably distinguishing computer programs from conventional language instructions is the fact that programs are executable on a computer. But the fact that a program has the capacity to direct the functioning of a computer does not mean that it lacks the additional capacity to convey information, and it is the conveying of information that renders instructions "speech" for purposes of the First Amendment." (footnote omitted).

The court concluded, "[C]omputer code conveying information is 'speech' within the meaning of the First Amendment . . ." *Corley*, 273 F.3d at 449-50 (2d Cir. 2001); see also *Junger v. Daily*, 209 F. 3d 481, 485 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."). But, as defense argued pretrial and at trial, it was not just code that was at issue in this

case. What was also at issue was the right to share and receive ideas, which are indisputably protected by the First Amendment.

"The First Amendment protects works which, taken as a whole, have serious literary, artistic, political, or scientific value, regardless of whether the government or a majority of the people approve of the ideas these works represent." *Miller v. California*, 413 U.S. 15, 34 (1973). That is the whole idea behind the First Amendment; someone can exercise their free right to speak or engage in conduct that others find distasteful or disagree with. "The prospect of crime . . . by itself does not justify laws suppressing protected speech." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002). Thus, "first amendment protection is not eliminated simply because publication of an idea creates a potential hazard." Id. at 1020. See Eugene Volokh, *Crime-Facilitating Speech*, 57 STAN. L. REV. 1095, 1103 (2005). Indeed, the fact is the code was protected because it did not present "some grave and imminent threat the government has the power to prevent, see *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 716, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)." *United States v. Alvarez*, 567 U.S. 709, 717, 132 S. Ct. 2537, 2544, 183 L. Ed. 2d 574 (2012).

Accordingly, the Government should have had to prove the code did not fall within the protection of the First Amendment, as the Court instructed. Instead, it excluded the code from the defense. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union,* 535 U.S. at 573 (internal quotation marks omitted). As a result, the

3

Constitution "demands that content-based restrictions on speech be presumed invalid ... and that the Government bear the burden of showing their constitutionality." *Ashcroft v. American Civil Liberties Union,* 542 U.S. 656, 660, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004)." *Alvarez*, 567 U.S. at 715–17.

Federal laws criminalizing speech require the speech be made with intent or knowledge that the information would be used to facilitate criminal conduct. *See also United States v. Featherston*, 461 F.2d 1119, 1121 (5th Cir. 1972) (upholding convictions for teaching the use or making of explosives or incendiary devices, as statute "requires those prosecuted to have acted with intent or knowledge that the information disseminated would be used in the furtherance of a civil disorder.").

When the government argued in closing that the First Amendment did not apply to conduct it eliminated from consideration everything it now argues in its responsive pleading to the Rule 29 and 33 motions was the criminal conduct. When the Court sustained the objection, it ratified the government's mischaracterization of the application of the First Amendment in this case. Notably, there was no jury instructions to correct this misstatement of law. Thus, effectively, the jurors were left with the impression and belief that the only application of the First Amendment defense was to his words spoken, and that it did not apply to any of the other things that the defendant did, including coding, or copying videos.

Stated by the prosecutor, during rebuttal, without any clarification, but rather only reinforcement by the Court, denied the defendant a fair trial:

4

      The impact of a prosecuting attorney's remarks must be particularly scrutinized, since, as Judge (Godbold points out in Hall v. United States,

> . . . great potential for jury persuasion . . . arises because the prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity. The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. 419 F.2d 582, 583—84 (5th Cir. 1969).
>
> After reviewing the transcript and carefully considering the context of the closing argument and the credibility issues presented at trial, we find that the error was prejudicial. Hence, we are in agreement with this court's decision in United States v. Bohle, 445 F.2d 54, 71 (7th Cir. 1971), which held that a misstatement of law is:
>
> '. . . prejudicially erroneous where the jury is misinformed concerning what it can consider on the critical issue of a case and that misinformation is reinforced by the court after the defendant challenges its accuracy.'

*United States v. Phillips*, 527 F.2d 1021, 1023 (7th Cir. 1975). Simply, it was not only the comment, but it was the source, the reinforcement when the objection was overruled, and the fact it came during the rebuttal argument.

5

Wherefore, for the foregoing reasons, as well as those set forth in Defendant's Motion, the Court should grant Defendant's motion for judgment of acquittal or, in the alternative, grant him a new trial.

Respectfully submitted,

/s/ Steven A. Greenberg
STEVEN A. GREENBERG,

/s/Joshua G. Herman
JOSHUA G. HERMAN
Attorneys for Defendant

GREENBERG TRIAL LAWYERS
53 West Jackson Blvd., Suite 1260
Chicago, Illinois 60604
(312) 879-9500

LAW OFFICE OF JOSHUA G. HERMAN
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
(312) 909-0434
jherman@joshhermanlaw.com