IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19 CR 869 |
| ) | Judge Robert W. Gettleman |
| THOMAS OSADZINSKI, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
SUPPLEMENTAL RULE 33 MOTION**

In *Holder v. Humanitarian Law Project*, 561 U.S. 1, 39 (2010), the Supreme Court cautioned:

> All this is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny. It is also not to say that any other statute relating to speech and terrorism would satisfy the First Amendment. In particular, we in no way suggest that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations.

In this case the government has prosecuted Defendant for his independent speech and activity and has thus run squarely afoul of the Supreme Court's clear pronouncements in *HLP* as well as Congress's unequivocal directive that "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. §2339B(i). The statement from the prosecutor was clear—there was no First Amendment defense because the First Amendment applies only to things that are "said" ("nobody is violating the defendant's First Amendment rights, because the

1

defendant hasn't been charged for something he said. He's been charged for something he did."). (Vol. 7, Tr., p. 1414:12-15). The statements eviscerated Defendant's First Amendment defense by misstating the law.

The government's Response to Defendant's Supplemental Rule 33 Motion only highlights the fundamental error in its rebuttal argument specifically, and with this prosecution generally. (Dkt. #180). Most notably, the government clings onto the mistaken notion that independent activity loses First Amendment protection and becomes terrorist activity when it *could* benefit or support a terrorist organization. That is legally wrong, directly contrary to *HLP*, and risks creating dangerous and chilling precedent that should be rejected. That argument is also a concession of Defendant's core argument—the First Amendment extends to more than just what someone "says." See . *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1026 (7th Cir. 2002)) (""[Defendants] may, with impunity, become members of Hamas, praise Hamas for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas. Section 2339B prohibits only the provision of material support...to a terrorist organization.").

To reiterate, and so that the fundamental problems with the government's rebuttal closing argument and its prosecution are properly framed, application of the material support statute must be limited to situations where an individual has acted at the direction of or in coordination with the terrorist organization. Here, viewing the evidence in the light most favorable to the government, defendant was a supporter of ISIS and tweaked a computer code that someone else had written so that it

2

organized videos by resolution size before sharing it with OCE4, who was *not* an ISIS member. It was also clear that the very purpose of the script was to help facilitate the transfer of ideas and viewpoints, or the "news" which is what "Heralds of the Internet" literally meant. There was insufficient evidence that Defendant was acting or attempting to act at the direction of or in coordination with ISIS when he modified the computer script and shared it with OCE4.

Thus, and at best, the evidence showed that Defendant independently used the modified computer script to share videos, which were not illegal themselves, to express viewpoints in a manner that could be said to have independently supported ISIS's viewpoints, goals, and philosophies. This support was legal and protected by the First Amendment. The government's Response exposes and repeats the multiple flaws in the prosecution, which not only further support Defendant's Rule 29 arguments, but also reinforce the Rule 33 arguments regarding the problematic rebuttal closing argument.

In that Response, the government reduces Defendant's argument to arguing that only the code itself was entitled to First Amendment protection, which it then attempts to refute. (Dkt. #180, p. 1). As an initial point, the computer script is, in and of itself, entitled to First Amendment protection based on the authorities cited in Defendant's pleading, namely *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445-49 (2d Cir. 2001) and *Junger v. Daily*, 209 F.3d 481 (6th Cir. 2000). While the government's Response begins with a header proclaiming "Computer Code is Not

3

Protected Speech" (Dkt. #180, p. 2), that is not an argument that is found in its pleading.

Indeed, the government does not counter the substantive holding of *Corley*—that computer code is subject to First Amendment protection. (Response, p. 3). It further argues that it has a "compelling interest in regulating such speech" (Dkt. #180, p. 3), which admits that Defendant was engaged in expressive activity subject to First Amendment expression, and also abdicates its position that the case involved conduct, not speech. Thus, the government concedes Defendant's main point: the First Amendment protects more than what one "says" and the government's bald statement to the contrary misstated the law.

Rather than defend its prior argument that the First Amendment only applies to speech and was categorically in applicable to this case, the government argues that the authority cited by Defendant is inapplicable because in material support cases, the First Amendment does not protect expressive activity that is done under the direction of or in coordination with foreign terrorist groups. (Dkt. #180, p. 2). But that is not what the prosecutor said in its rebuttal argument. Had the prosecutor argued, "nobody is violating the defendant's First Amendment rights, because the First Amendment does not apply to something you do that is performed in coordination with, or at the direction of, a foreign terrorist organization," that would have minimized the problem. But the prosecutor did not give the jurors the option of finding that the First Amendment did not apply due to coordination and direction; he instead told them that the First Amendment was categorically inapplicable because

4

the case did not involve speech. The government's Response doubles-down on this error by confirming its view that action done to support a terrorist organization is illegal.

Indeed, the government also contends that the code was not protected speech because it "was created for the purposes of supporting a terrorist organization." (Dkt. #180, p. 1).[1] But even then, it would be protected; a person can "support" in many ways. The government also argues that its statement that Defendant was not prosecuted for something he said, but rather something he did, showed that his conduct involving the computer code was "done for the benefit" of ISIS" and was, *ipso facto*, done at the direction and coordination of ISIS and is not protected by the First Amendment. (Dkt. #180, p. 5). Again, the government concedes Defendant's main point, that the government was wrong to say that the First Amendment does not apply because it only protects what one says. But beyond that, and even more problematic for the government, the government rehashes the "support" theory that is legally wrong and the "benefit" theory that was never presented to the jury.

The bankrupt "benefit" theory is particularly troubling. Speech and related activity can be done entirely independent yet still "benefit" a terrorist organization. Under the government's expansive interpretation of material support liability, such activity would automatically be done at the direction of and in coordination with the terrorist organization and therefore be stripped of all First Amendment protections.

---

[1] It must be noted that there was no evidence introduced at trial regarding how or why the script was originally developed, only that the government knew of its existence before Defendant's minor and superficial modifications to it.

5

In addition to not being presented to the jury (and thus improperly argued here), there is no legal support for that frighteningly broad prosecution theory that will necessarily sweep up innocent conduct.

Put simply, and at the risk of repetition, the law does not prohibit supporting a foreign terrorist organization. The law does not prohibit advocating for a terrorist organization, including by mirroring its goals and philosophies. The law does not prohibit sympathizing with a foreign terrorist organization. The law does not prohibit providing a benefit to the terrorist organization. *HLP*, 561 at 39. Thus, the law does not prohibit engaging in speech or other activity even if it was done "for the purposes of supporting a terrorist organization" as the government mistakenly contends.

The Court should also reject the government's attempt to seek refuge in the jury instruction that said, "advocacy performed in coordination with, or at the direction of, ISIS is not shielded by the First Amendment." (Dkt. #180, p. 3; R. 152 at 25). That instruction mattered little when the government said that the First Amendment was categorically inapplicable.

The government also gives short shrift to the full scope of Defendant's First Amendment arguments. The language of the written code enabled the transmission of ideas by facilitating the viewing and sharing of the videos. The government does not and has never argued that those videos in and of themselves were illegal. In its Response, the government argues that the jury's verdict indicates that it rejected the argument that Defendant was engaging in the exchange of ideas. (Dkt. #180, p. 4).

6

But those conclusory points fail to grapple with Defendant's argument—the jury reached the verdict after the prosecutor authoritatively said that the First Amendment only applies to what someone "says." That statement is wrong and fundamentally undercut the defense offered at trial, which was based on the expressive nature of the code itself, but also in what it facilitated—the sharing of ideas—which government's Response implicitly recognizes is subject to the First Amendment, contrary to what it told the jury.

-----

Congress created a statutory presumption that speech and expressive activity shall not be abridged by the material support statute. 18 U.S.C. §2339B(i). This safe harbor reflects Congress's concern that the material support statute could be used to prosecute First Amendment activity as terrorist, and its intent to limit such prosecutions. Contrary to that intent, the government disregarded this "Rule of Construction" in its rebuttal argument when it said that the First Amendment only applied to what Defendant "said." The government has compounded this error by arguing that the code is not protected because it was developed to "support" ISIS. But Congress and the Supreme Court have reaffirmed one's right to support foreign terrorist organizations. Any interests that the government can claim do not justify content-based censorship of unpopular views, including those that may "benefit" a terrorist organization. If anything, this case calls for greater First Amendment vigilance. *Tagami v. City of Chicago*, 875 F.3d 375, 380 (7th Cir. 2017) (Rovner, J., dissenting) ("The First Amendment protects not just the speech which a majority of

people find persuasive and worthwhile, but to the contrary, its protections are most essential when the speech is that with which most take offense.").

Ultimately, at the end of the day, the arguments the government has offered in response to this motion illustrate and confirm Defendant's Catch-22. There is no doubt that one can lawfully support a foreign terrorist organization. Doing so is legal and is often protected First Amendment activity. But the government told the jurors that, categorically, the First Amendment did not apply because Defendant had been charged with conduct, not speech. It did not argue it did not apply because the conduct removed the protection.

Then the government argued that what was lawful, namely support, the became unlawful because it was coordinated with ISIS. In the government's view, because ISIS wanted people to support it, any support was an *attempt* to act in coordination. In other words, any support for a foreign terrorist organization becomes *material* support or attempted *material* support (recall, the government's Response to Defendant's Rule 29 even asserted that this was completed, not inchoate offense) simply because the foreign terrorist organization wants people to support it.

Simply put, the government's arguments show how it is difficult, if not impossible, to discern what was attempted: was it an attempt to coordinate with ISIS, an attempt to be directed by ISIS, or an attempt to provide services to ISIS? This confusion was exacerbated when the government told the jurors that the First Amendment did not apply to the very conduct it had charged simply because the

8

conduct did not involve the spoken word it misled the jurors. Collectively, this denied the defendant a fair trial.

The Court should grant Defendant a new trial where he can be tried and judged based on accurate and fair statements of the law.

Respectfully submitted,

/s/ Steven A. Greenberg
STEVEN A. GREENBERG,

/s/Joshua G. Herman
JOSHUA G. HERMAN
Attorneys for Defendant

GREENBERG TRIAL LAWYERS
53 West Jackson Blvd., Suite 1260
Chicago, Illinois 60604
(312) 879-9500

LAW OFFICE OF JOSHUA G. HERMAN
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
(312) 909-0434
jherman@joshhermanlaw.com