UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
        vs.                        )  No. 19 CR 869
                                   )
THOMAS OSADZINSKI,                 )  Chicago, Illinois
                                   )  September 17, 2021
                Defendant.         )  9:29 a.m.

TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS

BEFORE THE HONORABLE ROBERT W. GETTLEMAN

APPEARANCES:

(Via Videoconference)

For the Plaintiff:        HON. JOHN R. LAUSCH, JR.
                          United States Attorney
                          BY:  MR. BARRY JONAS
                               MS. MELODY WELLS
                          Assistant United States Attorneys
                          219 South Dearborn Street, Fifth Floor
                          Chicago, Illinois  60604
                          (312) 353-5300


                          MS. ALEXANDRA HUGHES
                          Trial Attorney, Department of Justice
                          National Security Division
                          950 Pennsylvania Avenue, NW
                          Washington, D.C.  20530


Official Court Reporter:  NANCY L. BISTANY, CSR, RPR, FCRR
                          219 South Dearborn Street, Room 1706
                          Chicago, Illinois 60604
                          (312) 435-7626
                          nancy_bistany@ilnd.uscourts.gov

1    APPEARANCES:   (Continued)

2    (Via Videoconference)

3

4    For the Defendant:        GREENBERG TRIAL LAWYERS
                               BY:  MR. STEVEN GREENBERG
                               53 West Jackson Boulevard, Suite 1260
5                              Chicago, Illinois  60604
                               (312) 879-9500
6

7                              LAW OFFICE OF JOSHUA G. HERMAN
                               BY:  MR. JOSHUA G. HERMAN
8                              53 West Jackson Boulevard, Suite 404
                               Chicago, Illinois  60604
9                              (312) 909-0434

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings heard via videoconference:)

2               THE CLERK:  19 CR 869, USA versus Thomas Osadzinski.

3               If government counsel can please identify themselves

4     and defense counsel and the defendant.

5               MR. JONAS:  Good morning, Your Honor.

6               This is Barry Jonas of the United States.

7               MS. WELLS:  Good morning, Your Honor.

8               Melody Wells for the United States.

9               MS. HUGHES:  Good morning, Your Honor.

10              Alexandra Hughes for the United States.

11              MR. HERMAN:  Good morning, Judge.

12              It's Josh Herman on behalf of Thomas Osadzinski, who

13    is present.

14              MR. GREENBERG:  Good morning, Your Honor.

15              THE DEFENDANT:  Defendant present, Thomas Osadzinski.

16              MR. GREENBERG:  Good morning, Your Honor.

17              Steve Greenberg on behalf of the defendant, also.

18              THE COURT:  All right, folks.  This is here for, I

19    guess, an initial pretrial conference.  I know there are three

20    defense motions that I've seen, and the government was going to

21    file a motion today, I guess, which I haven't seen and I won't

22    be able to see until Monday.  But I assume the government wants

23    to respond to -- well, there's one to file documents under

24    seal.

25              Is there any disagreement about that, Mr. Jonas?

1      MR. JONAS:  No, Your Honor.

2      THE COURT:  Okay.  So we'll grant that.  And that's

3   document 108.

4      And then there's a defense motion *in limine* regarding

5   the government's exhibit list and the defense motion *in limine*,

6   which is 107, and defense motion *in limine* regarding

7   prosecution witness, Mr. Zelin, which is document 104.

8      So how quickly can you respond to those, Mr. Jonas?

9   I don't want to kill your weekend totally but --

10      MR. JONAS:  Your Honor, with regard to the motion on

11   the exhibit list, I think it's a little premature at the

12   moment, because we haven't finalized our exhibits to include

13   some of the exhibits that they're objecting to.

14      So because of that, I would ask if we could have

15   until next Friday to file a response.

16      THE COURT:  Let me get my calendar out here.

17      MR. JONAS:  I also think, Judge -- and we're happy to

18   file a response.  I think this is one of those issues where you

19   may not be able to rule until we're actually at trial and see

20   how the evidence is presented.  But, again, we're happy to file

21   a written response if we could just have a week to do so.

22      THE COURT:  Okay.

23      MR. GREENBERG:  But if we wait until trial, we --

24   this is Greenberg, by the way.

25      If we wait until trial, then there's the issue of

1    opening statements on some of the exhibits and talking about
2    the content.

3          Judge, in large part, our objection relates to
4    videos, which we're willing to stipulate are, in fact, ISIS
5    videos.

6          MR. JONAS:  Judge, it goes --

7          THE COURT:  You don't want the videos -- you don't
8    want the videos shown to the jury?

9          MR. GREENBERG:  Right.  We don't believe there's any
10   reason that the jury needs to actually see the videos, because
11   the content of the videos is irrelevant to the charged offense
12   and extraordinarily, I'm sure as the Court could conclude,
13   prejudicial.

14         MR. JONAS:  Your Honor, just real quick.  And, again,
15   we'll file this in written response.

16         The defendant himself sent some of these videos to
17   OCE 2 and told OCE 2 that he did the voiceover on at least one,
18   and I think he said he helped him -- I'm paraphrasing, of
19   course -- create the other two.

20         And I think because the defendant put it out there
21   that the jury is entitled to know what is it the defendant
22   claimed he did.  We are not planning on showing any unduly
23   violent scenes; but, again, we haven't made final cuts and
24   haven't a final decision on which exhibits we'd like to play.

25         So I think that it should -- it's premature to have

1   this argument at this time.  And I respect Mr. Greenberg's

2   point about opening statements, and I think we can probably

3   have a further discussion on this after we file our response.

4           THE COURT:  All right.  I'll give you to the 24th to

5   file your response.  I think there's a serious 403 issue that

6   runs throughout this entire case that we have to pay careful

7   attention to.  I think defense counsel put it pretty well, that

8   he's not accused of committing any violent acts.  He's accused

9   of support for the propagation of communications that include

10  violent acts by others.  It's a strange type of position or

11  unusual type of position to be in.

12          So, I mean, I'll pay careful attention to that.  And

13  I think that, you know, the government should be careful not to

14  overdo it to the point where -- like the picture of the World

15  Trade Center, right now given the fact that -- this is just an

16  initial reaction; I haven't made any decisions, obviously --

17  but given the fact that we have just observed the 20th

18  anniversary of 9/11, that type of thing might be overly

19  inflammatory at this particular point, the trial coming so

20  close to that observance.

21          MR. JONAS:  And --

22          THE COURT:  I'm just asking you to keep all those

23  type -- and I don't think I even have to --

24          MR. JONAS:  Your Honor, just -- just -- we are very,

25  very sensitive to the issue.  We really are.  And that's why

1    I'm saying this is premature.  What was -- because Your Honor

2    asked us for a preliminary witness list a little bit early on

3    in the proceedings, we put on there just sort of our initial

4    cut of what we were looking at.  And our plan is to reduce

5    that, and also we may add some.  I haven't -- I don't want to

6    limit ourselves to just the reduction, but that's why I think

7    this conversation is a little bit premature.

8            THE COURT:  All right.  Well, does the same thing

9    apply to Mr. Zelin?

10           MR. JONAS:  So Mr. Zelin, I'll let Ms. Hughes respond

11   to that since he will be her witness, and she's already started

12   drafting a response.

13           MS. HUGHES:  Your Honor, we would be prepared to file

14   our responses on Monday, if that's amenable to the Court.

15           THE COURT:  That's fine, although -- okay.  I mean,

16   some of the same issues are involved, obviously, with that as

17   well, but I want to be able to -- I want to be able to make a

18   decision on this, obviously, as far in advance of the trial

19   date as we can.

20           So if I don't get the response by the 24th, then I'm

21   not going to really be able to talk to you until -- since

22   Mr. Osadzinski is in custody, it has to be one of our days --

23   our assigned days to actually have a conversation about this.

24           So it will have to be on the 28th in the early

25   afternoon when we -- when our next day will be.

1          So if you want to reply, it doesn't give you any time

2     to really reply to the exhibit matter, and maybe you should

3     have a conversation about it.  Maybe you could work something

4     out and at least agree to some of those, but I'll give you a

5     chance to -- if Ms. Hughes files her response on the 20th, do

6     you want to reply -- if you could reply before the end of that

7     week, that would be helpful for me.

8          MR. HERMAN:  Judge, we can do that.  If we could have

9     a reply by the 24th, we could do that.

10          And, Your Honor, regarding the exhibits, we will have

11    ongoing conversations.  We have had some conversations with the

12    government, and we realize that it could be premature in filing

13    the motion, but we wanted to put these issues before the Court

14    to articulate what you observed before about the unique

15    aspect -- the unique issues in this particular case where we're

16    not dealing with somebody who is trying to go overseas to fight

17    himself.

18          And the government has provided us with an additional

19    exhibit list which expands on the prior one and has some

20    additional exhibits that I think we would argue fall in the

21    same category that we can speak with the government about

22    either today or on Monday.

23          THE COURT:  All right.  I'll just make an

24    observation -- and this is not binding or anything close to

25    it -- that I think some description of what ISIS is and what

1    they do, it would be appropriate to a jury.  I think, you know,

2    not everybody reads the New York Times every day, and so some

3    description of ISIS I think is appropriate.  It's a fine line

4    where that could be crossed where it becomes more prejudicial

5    than probative, and I think that we have to just be very

6    careful about that, and I may have to make some tough decisions

7    about that.

8             So, you know, the more we just recognize that

9    difficulty, the easier it will be for me to make those

10   decisions.

11            Now, Mr. Jonas, you're going to be filing a motion

12   today *in camera*; is that right?

13            MR. JONAS:  Your Honor, we are hoping that we can

14   file an *ex parte* classified motion today, but we've been

15   waiting for the FBI to give us a classified declaration.

16            We were told yesterday -- and this declaration is

17   signed by one of the -- or the assistant director of the FBI.

18   We were told yesterday it is with him.  And as soon as we get

19   it, we will file this motion; but the timing is out of our

20   hands at the moment.

21            And, Your Honor, we recognize this motion sort of

22   tees up the classified status conference on Monday, and we're

23   putting as much pressure as we can on the FBI to get this to us

24   as soon as possible.  We've been in constant discussions with

25   them for several weeks now on this.

1          THE COURT:  Well, please remember that I can't read

2    that motion remotely.

3          MR. JONAS:  Right.

4          THE COURT:  So I'll be in Monday and Tuesday of next

5    week.  So Monday would be the first time I would be able to

6    look at it anyway.

7          And then just give me a brief description of what the

8    procedure would be.  I know we're going to have a closed

9    session.  We're going to do it in the courtroom on Monday at --

10   I'm sorry, at 1:30.

11         Let me give you a time on the 28th, too, since I just

12   set a hearing for these other things on that.  So we'll make

13   that at 1:30 as well.

14         And I don't think that has to be -- this is just on

15   the defense motions.  I don't think that has to -- that's not

16   going to be closed or anything like that.

17         MR. GREENBERG:  Your Honor?

18         THE COURT:  Yes.

19         MR. GREENBERG:  Your Honor, this is Greenberg.

20         Is that -- on the 28th, are you intending for that to

21   be remote or in person?  I have a hearing involving a lot of

22   witnesses at 26th Street that's set for 1:00 that day.  I'm

23   guessing it won't go at 1:00, but hearings there, like hearings

24   in the federal building, are sort of difficult to come by.  And

25   you have to get all the people pre-approved -- you know, on a

 1   list to get in the building and so forth.

 2              So is there any way we could do it maybe a little bit

 3   earlier, whether it's in person or remote?

 4              THE COURT:  Well, I have a plea at -- I have a guilty

 5   plea at 11:00 that probably will take about a half an hour or

 6   so.

 7              Claire is telling me we don't have the courtroom on

 8   the 28th anyway, so it will be remote.

 9              MR. GREENBERG:  Could we just -- could we do it at

10   12:30 just --

11              THE COURT:  Yes, we could do it at 12:30.

12              MR. GREENBERG:  Thank you.

13              THE COURT:  Why don't we do it at 12:00.  I think

14   that would be easier for me.

15              MR. GREENBERG:  Okay.

16              THE COURT:  And we'll do it by video unless you want

17   to do it by phone.  I mean, it's just -- I'm going to have to

18   be ruling on the --

19              MR. GREENBERG:  Video is fine with me, Judge.  I can

20   do video that day.

21              THE COURT:  All right.  Well, we'll do it by -- we'll

22   do it from the office then, not from the courtroom.

23              Well, I'm concerned about the government's *ex parte*

24   motion, because I'm not going to have a lot of time to look at

25   it.

1    MR. JONAS:  Your Honor, could I make a suggestion

2  then?  And I -- is it possible then to move the status -- the

3  classified status to Tuesday then to give you a little more

4  time to review?

5    THE COURT:  Tuesday is not one of our days.

6    MR. JONAS:  Or another day that week.

7    THE COURT:  It will be really tough.

8    MR. GREENBERG:  Mr. Jonas --

9    THE COURT:  Let's leave it for Tuesday.  And if you

10  can get it to me before then, fine.  If you can't get it to me,

11  you can tell me when you're going to get it to me.  All right?

12    MR. JONAS:  That's fine, Judge.

13    MR. GREENBERG:  Judge?

14    THE COURT:  Yes.

15    MR. GREENBERG:  I had a -- this is Greenberg.  I have

16  a suggestion, which if they would like to submit a draft,

17  subject to getting a finalized copy and if that will make it

18  easier for everyone, because we know that Your Honor, if

19  there's changes in the final copy, won't consider the matters

20  in the draft, that's okay.

21    THE COURT:  How does that sound to you?

22    MR. JONAS:  That's fine, Judge.  We can give you a

23  draft of the motion and a draft of the attached declaration.

24  We can get it to Claire this afternoon so that Your Honor has

25  it first thing Monday morning and then just substitute a signed

1    copy once we get it.

2              THE COURT:  That's a great idea, Mr. Greenberg.

3    Thank you for that.  And that's *ex parte* --

4              MR. GREENBERG:  As you'll learn through the course of

5    this case, Judge, I'm full of great ideas.

6              THE COURT:  Well --

7              MR. JONAS:  Yes, Judge, that will be *ex parte*

8    classified.

9              THE COURT:  Okay.

10             MR. JONAS:  There will be an accompanied unclassified

11   motion that we'll file on the docket as well.

12             THE COURT:  Okay.  So help me here, because I'm sort

13   of learning my way through this process as we go along, and I

14   think the lawyers involved here are a lot -- are ahead of me on

15   all of this.

16             Once I get that and we have that closed hearing, does

17   that -- that does not include defense counsel; is that correct?

18             MR. JONAS:  No, for this -- for this CIPA II status

19   conference, defense counsel can be there.  They just can't see

20   the actual motion -- the classified version of the motion and

21   the declaration.  Then --

22             THE COURT:  They'll have, like, a redacted copy?  Is

23   that it or something else?

24             MR. JONAS:  We weren't planning on giving a redacted

25   copy.  If Your Honor orders one, we can do that, but that

 1    wasn't the initial plan.

 2              But largely, Your Honor, what this addresses -- and

 3    Mr. Herman, I know, is familiar with where we're going on

 4    this -- is for the OCEs and CHS, when they testify, there's

 5    certain protection -- protective measures that we're going to

 6    ask for.  And that's really largely what the declaration sets

 7    forth, what those measures are and why -- why they're needed.

 8              The unclassified motion also sets forth the measures.

 9    And what part of those measures includes a limitation on

10    cross-examination regarding the background on the OCEs and the

11    background of the FBI's undercover programs.  And what we would

12    like to discuss in this proceeding is where we think the

13    defense should not question the OCEs and CHS on that's going to

14    just start going into a classified arena.

15              So I think that they need to know where those lines

16    are, and that's why we're asking for the status conference.

17    There's a couple other items that go along with their testimony

18    that are a little more unique I don't want to go into here but

19    that we'll address on Monday as well.

20              The unclassified -- Judge, the unclassified motion

21    lays out some of these parameters.  So that's something the

22    defense will see in terms of some of the protective measures

23    we're asking for.

24              MR. HERMAN:  Judge, if I may.

25              We would appreciate a redacted version of the

 1    government's pleading.  I think that these issues are -- it

 2    would help the defense to know where the lines are, what the

 3    issues are, and to the extent we can and do have arguments that

 4    there's an implication of Sixth Amendment cross-examination

 5    issues and fair trial issues, that we'd be better equipped to

 6    address those in the hearing on Monday or during the course of

 7    the trial.

 8            I just -- we are flying blind here not knowing

 9    anything other than what Mr. Jonas said regarding these

10    specific topics and a couple of issues that I can't talk about

11    on this -- in this forum, but if we could have more

12    information, that would be helpful.

13            MR. JONAS:  Your Honor, that's fine.  I think --

14    honestly, I think the declaration -- the FBI declaration, a

15    redacted version may look like Swiss cheese, but we'll get them

16    what we can.

17            The classified version of the motion is largely the

18    unclass motion that we're going to file with references to the

19    declaration.

20            So we will happily give him a redacted version.  I'm

21    just not sure it's going to add a lot more to it, but at least

22    it will provide them some information.

23            THE COURT:  Well, I think it's a reasonable request,

24    and I think it's a reasonable response to the request at this

25    point since I haven't seen any of this stuff.

1    Okay.  Now, as far as preparing for the trial

2   itself -- I'm looking at my notes here -- we do have a special

3   panel, as you know, that we've ordered.  Maybe we don't need it

4   because you tell me it's not going to be quite as long as we

5   had originally -- I originally thought it might be, but we've

6   had 70 people, or maybe more than that, actually respond to our

7   request that they would be available for a longer trial.

8    So we're starting off with a fairly large -- a larger

9   group than I had anticipated of potential jurors.  Claire is

10  telling me we have over 80, so that's nice.

11   So, you know, we're going to be -- we're going to

12  have to pick this jury -- I can't even remember now.  Do we

13  have the jury instructions and the voir dire and all that?

14  Have we done that yet?

15   MR. JONAS:  Yes, Judge, those were filed several

16  weeks ago.

17   THE COURT:  Okay.  Good.  I don't have the entire

18  file at home with me here today, but I will have it on Monday.

19  If I have any questions about that, we'll do it then.

20   So the way they've been doing this is, they give the

21  questionnaire -- we'll probably bring in about 52 people in the

22  venire.  I think that should give us enough leeway that we'll

23  be able to pick a jury here.

24   And the way I pick the -- I'm going to try to adhere

25  to my usual jury selection process, so I might as well go

1     through it with you while we're talking about it right now.

2          My -- the way I have picked juries now for the last

3     27 years is I go through the entire panel.  We usually call

4     them alphabetically.  I go through the entire panel, and I

5     would usually put 14 people in the jury box and have them stand

6     up and answer the questions and then do any follow-ups with

7     them at sidebar that I thought was appropriate or that any

8     lawyer asked me to.

9          And at that point, the lawyers could ask the jurors

10    questions themselves, and then I would either rule -- if there

11    was a motion, I would rule either then or before we adjourned

12    but not -- any motions for cause should not be made in front of

13    the jurors.  So we're going to have -- we're going to have to

14    figure this out.

15         So the way they're doing it now is instead of orally

16    answering the questions the way we used to do it, they've been

17    filling out the voir dire form in written form when they come

18    in to do their tests before the actual jury selection begins, a

19    couple days before.  So you will -- all the counsel will have

20    copies of the written responses to the voir dire questions for

21    each of the potential jurors.

22         You will be directed -- you are directed not to do

23    any type of internet research on the panel, no social media, no

24    Googling or anything like that.  And so in a way you may

25    actually know more about the people on the panel in this method

1  than you did -- than you would in a regular -- before we

2  started doing it this way.  I never had jurors fill out written

3  questionnaires before this.

4      So then they'll call them in.  They'll all be in one

5  of the courtrooms or maybe two courtrooms, because we want to

6  keep them socially distanced.  And, of course, they'll all have

7  tested negative at that point for COVID.  So they'll be brought

8  into our courtroom 17 at a time.

9      And then I will ask -- if I have any follow-up

10 questions based on their answers to the voir dire questions

11 that they filled out, I will ask them to step over to sidebar.

12 I haven't done this yet.  This will be my first time doing it

13 this way.  They'll step over to sidebar, and they'll have an

14 iPad there, and they'll be able to answer the questions

15 standing there.  Usually they're surrounded by lawyers and my

16 law clerks, but everybody will basically stay where they are.

17 Counsel will stay at counsel table.  I'll stay on the bench.

18 And they can answer any questions that we have in that way.

19     You will be able, I am told, to make any for-cause

20 objections without the juror hearing but that only I would

21 hear, but we'll probably -- we may just wait until each group

22 of 17 is done before we do that.

23     And then we take -- after going through the entire

24 panel -- let's say we have 52.  The magic number is 32.  That

25 would be 14 people, 12 jurors and 2 alternates.  And the

1  government -- and the defense gets 10 plus 1, and the

2  government gets 6 plus 1. So if you add all those up, it comes

3  to 32. So if we had 52, that would be 20 people more than we

4  need.

5  So let's just say -- and, again, these are

6  prescreened people. These are people who already said that

7  they're available during this period, so we don't have a lot of

8  that type of conflict, at least theoretically.

9  So what I like to do is waive the rule that says you

10  do 10 and then 1 for the alternate, so that I can give each

11  side as many extra strikes based on the 6-to-10 ratio that I

12  can.

13  So let's just say that we were to strike 10 of those

14  people and have 42 left, that would mean we have 10 -- we have

15  10 extra strikes. I would give the defense 6. We would have

16  10 extra people, actually. I would give the defense 6 extra

17  strikes and the government 4 extra strikes.

18  So that's how I've been doing it now for years, and

19  it basically means that theoretically the first person to be

20  called to answer questions would have the same theoretical

21  chance to be on the jury as the last person to be called, and

22  I'm able to give extra strikes that way to both sides.

23  Is that agreeable to everybody?

24  MR. JONAS: Yes, Judge.

25  MR. GREENBERG: Judge, that's --

1           THE COURT:  I'm sorry?

2           MR. GREENBERG:  That's agreeable to the defense, with

3    one caveat.

4           This is the second case recently where a judge has

5    told me that we're not to do an internet search of the jurors,

6    and I think that runs contrary to the purpose of voir dire,

7    which is to learn information about the jurors.  And I'm not

8    sure why -- why we're being told we can't do it if we --

9    certainly we're not going to friend them on Facebook or

10   communicate with them in any way, but you can learn information

11   about people.  And the information you're learning is in the

12   public record.

13          So I'm not sure why the prohibition on doing that.

14          THE COURT:  It's to give the assurance to the -- you

15   know, we always tell jurors, we're not looking into your

16   personal background.  We're not trying to pry into your

17   personal life.  We just want to make sure you can be fair and

18   impartial.  And that's what the voir dire questions are meant

19   to do.

20          If they believe that you've been doing research --

21   you know, normally you don't know who the panel is going to be

22   until they walk into the room.  Here you're going to know

23   that --

24          MR. GREENBERG:  Right.

25          THE COURT:  -- a week in advance.

1       And if jurors thought that lawyers, the government,

2   the FBI, who knows who, were, you know, doing that type of

3   research on them, they might be a lot more reluctant to serve

4   than just being able to answer the questions.  That's why we

5   have voir dire questions.  That's the notion behind that.

6       I hear what you're saying, but we've never allowed

7   the parties to a jury trial to know who the panel is going to

8   be until they're called into the courtroom that day, which is

9   random, totally random.

10      So that's -- we're trying to follow that tradition,

11  if you will, and to assure jurors that you're not going, you

12  know, looking into their personal things.

13      And once they are on the jury, there's nothing wrong

14  with doing that, but to do that to the entire panel I think

15  might cause more problems --

16          MR. GREENBERG:  Your Honor, once they're on the --

17          THE COURT:  -- that we can avoid.

18          MR. GREENBERG:  Once they're on the jury, there's no

19  point in doing it.  And there's a number of -- you know, when

20  they come in, for instance, in state court juries and we get

21  the little cards, we immediately start -- someone on the

22  defense team will immediately start Googling the people just to

23  see what's up.  You don't have -- admittedly, here you have

24  more time, but the jurors don't necessarily know that you're

25  doing that.

1           There's a number of cases where they have discussed

2   doing that, so we may seek to file something.  There are not

3   really many federal cases, but there's a number of state cases,

4   and I just want to flag that for the Court.

5           THE COURT:  But, no, I think that -- I think it's an

6   interesting issue.  And as I say, this is my first jury trial

7   since the pandemic started.  And I'm following the procedure

8   that I think most of my colleagues have been following.

9           I will -- I will make some inquires myself.  I don't

10   know if the government has a position on this or not.

11           MR. JONAS:  Your Honor, we would object to internet

12   research for the very reasons that Your Honor pointed out.

13           THE COURT:  All right.  Well, let me ask some of my

14   colleagues how they've been doing it.  I'm just following the

15   procedure that I understand has been used in our court.

16           But, Mr. Greenberg, feel free to file anything you

17   think you should file on this subject.  It's an interesting

18   subject, and I appreciate the point you're making.  It's

19   just -- it's a new issue for me, so I'll take a look at that.

20           MR. JONAS:  Can I ask two questions and one

21   observation, Judge?

22           I've done -- this will be my third pandemic era trial

23   and the jury selection process.  By having the potential juror

24   go up to the sidebar and read the question on an iPad is so

25   much more efficient than the way it used to be.  It moves jury

1    selection along much quicker than having all parties get up,

2    walk to sidebar, and go back.  Just an observation.

3         Two questions, Judge.  One, I think we've told you,

4    we anticipate this to be about a two-week trial; and depending

5    on the defense, maybe it spills into a third week.  I don't

6    know.  But I think the government will rest within two weeks.

7    But given just the COVID era, would it be smart having a third

8    alternate?

9         THE COURT:  How does the defense feel about that?

10   We'd have to build out the jury box.

11        MR. GREENBERG:  Josh, you're going to have to speak

12   to that, because I cut out for a minute.

13        MR. HERMAN:  There may be -- there may be some

14   additional concerns that Mr. Greenberg and I need to discuss

15   off-line.

16        I think it's a decent idea.  My initial instinct is

17   that we would agree.  I would like to take a poll of colleagues

18   to see what's going on in other trials.  I know there are at

19   least two trials going on right now, three criminal trials, I

20   believe.

21        THE COURT:  Yes.  Well, you know, that's not a bad

22   idea, actually, Mr. Jonas.  And now that I think about it,

23   they're not in the jury box, so we don't have to build out the

24   jury box.  They're spread around the courtroom anyway.  So

25   putting one more in there probably wouldn't be a bad idea, just

1    in case.

2          MR. JONAS:  Yeah, I just -- you know, I've heard --

3    and this is just anecdotally -- in other districts where you

4    see reports in trials that are stopped in the middle because a

5    juror comes in and says, "I had exposure," and then that just

6    puts -- stops the trial in its tracks.

7          MR. HERMAN:  In fairness, though, if one juror has

8    exposure, depending on when that exposure was, it could kick

9    out everybody in the room.

10          THE COURT:  I know.

11          MR. JONAS:  Understood.  Understood.

12          THE COURT:  I know.  We have to live with the world

13    we have at the moment.

14          MR. JONAS:  Yeah.  One other question on the jury

15    selection.  I want to make sure I heard you right.

16          You had said to Mr. Greenberg that we'll have the

17    jurors -- I guess their questionnaires a week in advance.  I

18    just want to make sure.  Is that correct, it's going to be a

19    week --

20          THE COURT:  I don't think it will be full week, no.

21          I believe we're starting on the 4th.  I think you'll

22    have them the Friday beforehand.

23          MR. JONAS:  That's what I thought, Judge.

24          THE COURT:  Yes.

25          MR. JONAS:  And one last question, Judge.

1      THE COURT:  It will be the week -- it will be in the
2  week before that.
3      MR. JONAS:  Got it.  Are we doing this in your
4  courtroom, the trial?
5      THE COURT:  Yes, yes.  Thank God.
6      One other really minor thing.  There is an overflow
7  courtroom that we will be broadcasting the trial to.  I also
8  have some law students at Northwestern in my trial ad course
9  who are interested in being able to listen in to the public
10  part of the trial.  And we were going to give them the dial-in
11  information if they are so interested.
12      I assume there's no objection --
13      MR. GREENBERG:  Your Honor, I apologize.  I don't
14  mean to keep interrupting you with the phone situation.  I
15  sometimes think you're done when you pause, so I apologize if
16  I'm cutting you off.
17      THE COURT:  Go ahead.
18      MR. GREENBERG:  My understanding is that family
19  members will have to watch from the overflow courtroom; is that
20  correct?
21      THE COURT:  That's generally how it's been.
22      MR. GREENBERG:  Okay.  I would ask, because
23  Mr. Osadzinski's family is planning on attending the trial, if
24  the Court would explain to the jurors at a minimum that his
25  family is there, but because of COVID they're required to watch

1    from another room, but ordinarily they would be sitting in the

2    pews in the courtroom, if the Court is not inclined to allow

3    them if there's enough room to sit in the courtroom.

4            MR. JONAS:  Your Honor, we would object to that.

5    When -- if the family was there, the Court would not point them

6    out as family members.  The jurors can speculate who they are,

7    but the Court doesn't point them out.

8            So for you to say that they're not here and in the

9    overflow courtroom is something that's not un -- not usual, and

10   I would -- we would object to doing that.

11           THE COURT:  I think --

12           MR. GREENBERG:  Then we would ask that they be in the

13   courtroom, because it's a -- he's entitled to a public trial,

14   and this is one of those very fundamental structural things.

15           MR. JONAS:  We're not objecting to them being in the

16   courtroom if there's space and the COVID protocols allow.

17           MR. GREENBERG:  Okay.

18           THE COURT:  I will look into that.

19           But, Mr. Greenberg, you could -- you know, the jury

20   will be spread out in probably the first couple of rows.  I

21   could ask Claire.  Claire has actually sat in a number of these

22   cases with other judges.

23           Do any of the jurors sit in the jury box?

24           THE CLERK:  Your Honor, there's three jurors in the

25   jury box, and then they spread the other jurors throughout the

1    pews with six feet of separation.

2          So there's one or two in each pew, and they go every
3    other pew.

4          MR. GREENBERG:  They --

5          THE CLERK:  I would have to -- I would have to look
6    to see -- if we have 15 jurors, I would have to look to see how
7    much room there would be for public, which would then have to
8    be spaced, which right now we're being told that no public are
9    allowed.  I could talk to the clerk.

10          THE COURT:  All right.  Well, we will look into that.
11    I appreciate what you are saying, but I don't want to have to
12    explain that to your family folks.  I think you can explain
13    that to them.  And if they have to be in the overflow
14    courtroom, we'll obviously give them priority in the overflow
15    courtroom.

16          MR. GREENBERG:  That's not my question, Judge.

17          My question or my concern is that if they're not in
18    the courtroom, it gives -- I want the jurors to know that he
19    has people who care about him who are watching the trial.

20          Now, Mr. Jonas says that ordinarily they're not
21    identified for the jury, and that's correct.  But I think that
22    if we have a bunch of jurors, you know, they look and they see
23    what looks like a mom and a dad sitting there day after day,
24    especially in a case like this where there's no victim who is a
25    person.  So it's not like a murder case where the victim's

1   family is coming to watch.

2            The jurors are smart enough to figure out that that's

3   the defendant's parents that are watching.  And if we're

4   deprived of that -- and there's a reason why people are allowed

5   to come in and watch.  And if we're deprived of that, I think

6   it's appropriate for something to be said to the jurors, so

7   that they don't think that everybody has just abandoned this

8   young man.

9            MR. JONAS:  Judge, and the opposite -- what if the

10  case was the opposite?  What if his parents didn't want to be

11  there because they didn't want to support him?  Would the Court

12  point that as well?

13           I can't -- we strongly object to Mr. Greenberg's

14  request.  It's putting an imprimatur on the family support that

15  shouldn't be there, Judge.

16           THE COURT:  Mr. Jonas, you can stop right there.

17           You're asking me, in a sense, to make an argument for

18  you, Mr. Greenberg, that I'm not going to do.  What we can do,

19  of course, and what we will do is tell the jurors that you are

20  being spread out in the courtroom because of the COVID

21  protocols, and that's why you are being spaced out the way you

22  are.  And there's really no room in the courtroom for anybody

23  else, so they will know that they're the only people in the

24  courtroom.  And --

25           MR. GREENBERG:  Will you --

1           THE COURT:  And I'm not in a position to say, oh, by

2    the way, his parents are the overflow courtroom.  I don't think

3    that would be appropriate for me to say.

4           MR. GREENBERG:  Well, will you add to that that

5    because of the COVID protocols and the fact that the jurors are

6    spread out, no one from the public, including family, is

7    allowed in the courtroom to watch the proceedings; and if they

8    want to watch it, they need to watch it from a different

9    courtroom that's been set up?

10          THE COURT:  It's the "including family" that

11   Mr. Jonas has a problem with.

12          MR. JONAS:  That's correct.

13          MR. GREENBERG:  Okay.  Forget the "including family."

14          MR. JONAS:  If you want to say everything that

15   Mr. Greenberg said without the family part, just about the

16   public in general, we have no objection to that.

17          THE COURT:  Okay.  Mr. Greenberg, remind me about

18   that when we start the trial.  Okay?

19          MR. GREENBERG:  Okay.

20          THE COURT:  All right.  I think we've come to an

21   agreement.

22          All right.  See you guys on the -- next Monday at

23   1:30.

24          MR. GREENBERG:  Thank you, Judge.  Have a nice

25   weekend.

1          MR. JONAS:  Judge, just -- Judge, Your Honor, just a

2     couple of quick questions or points I just want to touch upon.

3          Staying with the COVID protocols, I just want to make

4     sure everyone needs to be masked except for the witness when

5     the witness is testifying.  I'm assuming that's the case?

6          THE COURT:  Well, the last trial I did, I did a bench

7     trial in May and June.  And we were -- I told the lawyers they

8     had the -- they could -- they were all vaccinated, and I assume

9     that everybody here will be vaccinated.  But the jurors are

10    going to be asked to do that.

11         So I think it would probably be courteous, at

12    least -- you know, even though I'm not sure we need to mask,

13    but I think that it would be best for everybody to remain

14    masked.

15         MR. JONAS:  And that's fine with the government, Your

16    Honor.

17         My second question is:  Will we be able to question

18    witnesses from the lectern like we normally do, or will we have

19    to stay seated?  And, again, I know things change.  I'm just

20    thinking back to the first COVID trial.

21         THE COURT:  I would prefer the lectern.

22         MR. JONAS:  Okay.

23         THE COURT:  I think it's a lot -- even if you're

24    masked, it's a lot easier to conduct an examination from the

25    lectern than it is from your chair at the table.

1    MR. JONAS:  Agreed, Your Honor.

2        When we are questioning the witnesses from the

3    lectern, should we continue to wear our mask at that point, or

4    are we able to take it off so that we can be heard clearly?

5        THE COURT:  I would prefer you could take the mask

6    off when you're asking the questions.  You're going to have to

7    change -- you know, you have to change that little -- I don't

8    know what you call it.

9        MR. JONAS:  I have a name for it, Judge.  I won't say

10   it on the record.

11       THE COURT:  I know.  I've got the same name.  Let's

12   call it a sock on the microphone every time we do that, but --

13       MR. JONAS:  That's fine.

14       THE COURT:  Claire is texting me.  She said it's

15   called a microphone cover.  I like the word "sock."  We'll call

16   it a microphone --

17       MR. GREENBERG:  I like Mr. Jonas's word that he won't

18   say.

19       MR. JONAS:  Two other questions, Your Honor.

20       And just it's more -- not so much questions, just to

21   inform the Court.  And we noticed the defense this morning.

22   It's not really substantive.  But in going through some of the

23   CHS recordings that are reflected in the complaint, we noticed

24   some things weren't -- we had to clarify a few things.

25       There was one spot where we have a quotation mark

1    that was in the wrong place.  There's another spot where there

2    were three words in the middle of a quote that was incorrect,

3    and it didn't change the substance of the quote.

4         So we did let defense know.  I'm not sure if they

5    want to raise it as an issue at some point, but we just wanted

6    to let Your Honor know that we informed them that we've cleaned

7    some things up behind the scenes with them.

8         THE COURT:  Is this anything I've seen?

9         MR. JONAS:  I don't know.  It's in the complaint,

10   just a few paragraphs in the complaint that we addressed.

11        THE COURT:  Well, the complaint is superseded by the

12   indictment.  So I don't know why we would have to deal with it.

13        MR. JONAS:  No.  I understand.  I raise it only

14   because, Your Honor, I think, like, the bill of particular

15   issue referenced back to the complaint.  I think there may have

16   been one item that we reference in our motion to dismiss.

17        Again, nothing changes the substance of what was

18   said.  It was just clarifying things a little more

19   particularly.

20        I think Mr. Herman had something to say.

21        MR. HERMAN:  Yeah.  I mean, it may be relevant if the

22   affiant testifies, but we've got to analyze the exact changes

23   to see if there's anything else --

24        THE COURT:  Okay.  Why don't you two have a

25   discussion about that?  And this should not be a point of

1    contention.

2              MR. HERMAN:  Yeah.  Your Honor, back to the masking,

3    I don't want our silence on the defense side right now to be

4    seen as acquiescence.

5              We had, in some respects, anticipated not being

6    masked for the proceeding, given that we're all vaccinated, and

7    there will be other measures taking place in -- and tested

8    every day or tested consistent with the program in the

9    courtroom.

10             I think particularly for Mr. Osadzinski, having him

11   masked -- having a masked defendant in a case like this raises

12   particular concerns.  It somewhat dovetails with the 403

13   issues.  I think there will be images that the government will

14   seek to introduce of men in military fatigues wearing masks,

15   and it raises some concerns on our side, especially given the

16   health protocols that will be in place.

17             MR. JONAS:  Your Honor, the government takes no

18   position on that.  We'll defer to the Court.

19             MR. HERMAN:  It would be our strong opinion to -- or

20   position that we not be masked -- that counsel and defendant

21   not be masked.

22             THE COURT:  Well, I understand your point with regard

23   to Mr. Osadzinski.  If the government and its crew -- there's

24   going to be three of you at the table with an agent; is that

25   right?

1  MR. JONAS:  There will be three of us at the table.

2  I'm not sure if there will be space for an agent.  I am

3  assuming the three of us will have to be separated a little

4  bit, so I'm not sure if there will be enough room for the

5  agent.

6  THE COURT:  Well, I consider co-counsel to be in the

7  bubble.  So I'm not going to make you -- I'm not going to make

8  Mr. Greenberg and his co-counsel -- are you going to have

9  anybody else at the table besides the defendant --

10  MR. HERMAN:  We may have a paralegal.

11  THE COURT:  -- Mr. Herman?  I mean, I consider you

12  bubbled.  So, you know, for you to be separated by three feet

13  or six feet is really counter-productive.  So you're not going

14  to have any trouble with me at all on that one.

15  I'm going to leave it up to you whether you want to

16  be masked or not.  I'm going to leave it up to counsel.  And if

17  you want the defendant to be unmasked, I appreciate what you're

18  saying.

19  MR. JONAS:  Judge, the government may wear a mask --

20  MR. GREENBERG:  Judge, can we have Mr. --

21  MR. JONAS:  I was going to say, the government --

22  MR. GREENBERG:  Can we have Mr. Osadzinski --

23  THE COURT REPORTER:  I'm sorry.  One at a time,

24  please.

25  MR. GREENBERG:  I'm sorry.

1           THE COURT:  Let Mr. Jonas talk.

2           MR. JONAS:  I was just going to say, Judge, the

3    government may wear masks just to let the jury know that we

4    care about their health.

5           MR. GREENBERG:  And I was going to ask if

6    Mr. Osadzinski's parents can sit in our bubble.

7           THE COURT:  All right.  We've been through that

8    already.

9           MR. JONAS:  Judge, the other question --

10          THE COURT:  None of this -- by the way, none of this

11   is anything that I want or that you want or that anybody should

12   want.  It's just the way the world is today.

13          I never thought that we would be in this position

14   this far along in the world, but it's the position we're in,

15   unfortunately.

16          MR. JONAS:  Judge, there's two other further

17   questions.

18          We have several witnesses coming in from out of town,

19   and we saw the email from Claire regarding witnesses needing to

20   be tested if they're going to be in the court for more than two

21   days.

22          Some of the witnesses may not be in the city -- the

23   first day they may be in the city may be the day they testify.

24   So I guess we're just looking for clarification on how far in

25   advance they need to be tested, because we can have them tested

1    where they're at prior to them getting on a plane, if that

2    works.

3              THE COURT:  Well, I was just going to suggest that,

4    that they can be -- they should be tested wherever they're at

5    and bring whatever confirmation of negative results when they

6    come into the courthouse.

7              MR. JONAS:  Okay.

8              THE COURT:  That should be fine.  I mean, otherwise

9    it would be impossible to do.

10             MR. JONAS:  And we'll let them know that.

11             And then the last thing, Judge, I just want to

12   confirm that we're not having trial on Friday, October 8th?  Is

13   that correct?

14             THE COURT:  No, I think we are.

15             MR. JONAS:  We are?  Okay.

16             THE COURT:  Wait, wait.  Hold on.  Hold on.  Let me

17   just look here.  I'm sorry.  I'm mixing this up with another

18   case.  Ordinarily -- hold on one second.

19             Okay.  Right, you're correct.  We are going to have

20   trial on the 15th because of the Columbus Day holiday or the

21   Indigenous Peoples' Day holiday, is what it's called.

22             MR. JONAS:  We have -- we -- in plotting out when we

23   think our witnesses will testify, we're going to have -- we

24   expect that there's a chance one of our out-of-town witnesses

25   would start the afternoon of the Thursday -- the Thursday, the

1    7th.

2              And what we would request -- instead of having that

3    person come in, sit around for a few hours, fly back to where

4    they are for a four-day weekend and then come back, we would

5    request if that Thursday afternoon we're ready for them, that

6    we just stop at that point and then pick up again Tuesday

7    morning so they're not flying back and forth unnecessarily, if

8    that's okay.  Otherwise, we would request trial on Friday so

9    that we can get their testimony in.

10             THE COURT:  Well, that would be fine with me.  You

11   know, try to -- try to arrange your witnesses as efficiently as

12   possible.  I really can't micromanage that too much for you if

13   we have to break a little early.

14             I also should tell you that we do break early on

15   Tuesdays.  We break around 3:30, 3:40 on Tuesdays.

16             MR. JONAS:  Okay.  Thank you, Judge.

17             And that's all that I think the government had

18   unless, Ms. Wells or Ms. Hughes, you have anything you want to

19   add or ask?

20             MS. WELLS:  No, thank you, Your Honor.

21             THE COURT:  Okay.  Is Ms. Ardam on the case anymore?

22             MR. JONAS:  No.  She has a trial that started a few

23   days -- a few days ago, and between that trial, she couldn't do

24   both.

25             THE COURT:  Okay.  I just want to take her off the

1    list.

2              Okay.  See you guys on Monday then.  Have a good

3    weekend.

4              MR. JONAS:  Thank you, Judge.  You, too.

5              THE COURT:  All right.

6              MS. WELLS:  Thank you, Judge.

7              THE COURT:  I'm going to ask everybody to get off

8    except for my staff, please.

9         (Proceedings concluded.)

C E R T I F I C A T E

I, Nancy L. Bistany, certify that the foregoing is a complete, true, and accurate transcript from the record of proceedings on September 17, 2021, before the HON. ROBERT W. GETTLEMAN in the above-entitled matter.


_/s/ Nancy L. Bistany, CSR, RPR, FCRR_                January 11, 2023

    Official Court Reporter                Date
    United States District Court
    Northern District of Illinois
    Eastern Division